IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE CHAMBERLAIN GROUP, INC., )
    Plaintiff/ )
    Counterclaim Defendant, )
     )
and JOHNSON CONTROLS )
INTERIORS LLC., etc., )
    Plaintiff, )
     )
vs. ) No. 05 C 3449
     )
LEAR CORPORATION, et al., )
     )
    Defendants/ )
    Counterclaim Plaintiffs. )

## MEMORANDUM OPINION AND ORDER

The Chamberlain Group, Inc. and Johnson Controls Interiors LLC brought this patent infringement action against Lear Corporation and Ford Motor Company. After a Markman hearing,[1] and close analysis of the patent claims, patent specifications, prosecution histories, and the parties' arguments, we construed four disputed claim terms contained in Claim 4 of U.S. Patent No. 6,514,544 ('544 patent). Chamberlain Group, Inc. v. Lear Corporation, 2006 WL 2632074 (N.D.Ill.2006) (Chamberlain I)(September 11, 2006). After consideration of all arguments, and acting under the guidance of the recent Federal Circuit opinion of Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005), the order adopted plaintiffs' constructions of the disputed terms. Defendant Lear Corporation now moves the court to reconsider its construction of one of those terms, "binary code." For the following reasons, defendant Lear's motion is granted, in part.

---

[1] Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir.1995), aff'd. 517 U..S. 370 (1996).

Originally, we construed "binary code" as "a code in which each code element may be either of two distinct kinds of values, which code may represent various kinds of letters and numbers including, but not limited to, a representation of a base 2 number"(Chamberlain I, 2006 WL 2632074, at *4). Lear takes issue with a sentence in Chamberlain I, wherein we stated: "[a]s we noted above, the claims never limit the initial binary code to a 'binary number,' instead leaving the term open to encompass other numerical and character languages, including trinary code." *Id.* Lear argues that, based on the intrinsic evidence of the patents' claims, "binary code" cannot encompass a trinary code. Therefore, Lear implores us to modify our construction of "binary code," to "a code in which each code element may be either of two distinct kinds of values, which code may represent various kinds of letters and numbers including, but not limited to, a representation of a base two number, but not including a trinary code" (def's brief, at 6).

Not surprisingly, plaintiffs disagree. First, plaintiffs suggest that Lear's arguments are inappropriate for a motion to reconsider. Second, they assert that Lear is simply attempting to rehash its argument that "binary code" should be limited to a binary number – a construction we rejected in Chamberlain I. Plaintiffs request that we deny Lear's motion to reconsider, and in the alternative, simply modify the sentence at the heart of Lear's concerns. Specifically, they suggest the following modification: "As noted above, the claims never limit the initial binary code to a 'binary number,' instead leaving the term open to encompass other numerical and character languages, including other numerical and character languages that may also be represented in trinary code" (plfs' response, at 7).

Generally, motions to reconsider are only appropriate to correct manifest errors of law or to present newly discovered evidence. Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606

(7th Cir.2000); United Mun. Leasing Corp. v. Lexington Corporate Properties, Inc., 1997 WL 587753, *2 (N.D.Ill.1997). Such motions are valuable where the court misunderstands a party, makes a decision outside of the adversarial issues presented by the parties, or makes an error of apprehension. Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir.1990). Because Lear suggests that we made an error of law with respect to our claim construction, its motion to reconsider is appropriate.

Lear's central argument is that we erred in relying on dictionary definitions in construing "binary code," in contravention of Phillips. We disagree. Although Phillips clearly preferred intrinsic evidence to extrinsic evidence in construing patent claims, the Federal Circuit held that a place remains for dictionaries, particularly technical dictionaries, in claim construction. A patent's claims and specification must be "understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology." Phillips, 415 F.3d at 1313. Such person "is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field." *Id.* Considering that this court does not have such expertise, the Phillips court recognized that we may find guidance in "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.*, at 1314 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1116 (Fed.Cir.2004)). The Federal Circuit continued: "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (quoting Innova, 381 F.3d at 1116). As guided by Phillips, we began with the intrinsic evidence – the claim language itself, the

specification, and the prosecution history – and then turned to the IEEE Standard Dictionary of Electrical and Electronics Terms to aid us in determining what was the ordinary meaning of the terms of art in dispute. We do not believe any such analysis was done in contravention of the principles set forth in Phillips.

We do, however, believe that the sentence with which Lear takes issue in Chamberlain I includes an incorrect term. We stated, "As we noted above, the claims never limit the initial binary code to a 'binary number,' instead leaving the term open to encompass other numerical and character languages, including trinary code." Chamberlain I, 2006 WL 2632074, at *4. We should have said, "As we noted above, the claims never limit the initial binary code to a 'binary number,' instead leaving the term open to encompass other numerical and character languages, including trinary *numbers*."

We agree with Lear that "binary code" cannot encompass trinary code. The Phillips court indicated that the context of a term can be highly instructive in claim construction (415 F.3d at 1314). There, the Federal Circuit indicated that the term "steel baffles," "strongly implies that the term 'baffles' does not inherently mean objects made of steel." Id. Likewise, because the '544 patent specification states that the rolling code (binary code) is converted or changed to a trinary code ('544, 3:17-28, 7:8-14), a binary code cannot be a trinary code.

Although we recognize our mistake, and hopefully, have clarified our meaning, we see no reason to alter our construction of "binary code" as "a code in which each code element may be either of two distinct kinds of values, which code may represent various kinds of letters and numbers including, but not limited to, a representation of a base 2 number." For both parties, however, we offer the following clarifying summations. First, a binary code is not limited to a binary number. Second, a trinary code cannot be defined as a binary code with

respect to the patents-in-suit.

## CONCLUSION

For the reasons stated herein, we grant, in part, Lear's motion for reconsideration.

                                                                             */s/ James B. Moran*
                                                                             JAMES B. MORAN
                                                      Senior Judge, U. S. District Court

Feb. 20, 2007.