# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THE CHAMBERLAIN GROUP, INC. and JOHNSON CONTROLS INTERIORS LLC., | ) ) ) | Civil Action No.: 05 C 3449 |
| Plaintiffs, | ) ) | The Honorable Amy J. St. Eve |
| v. | ) ) | Magistrate Judge Morton Denlow |
| LEAR CORPORATION, | ) ) | Redacted |
| Defendant. | ) | |

# LEAR CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF <u>NON-INFRINGEMENT OF THE '544 AND '123 PATENTS</u>

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

THE UNDISPUTED FACTS ..................................................................................................2
    I.     Plaintiffs' Claims For Patent Infringement Against Lear ........................................2
    II.    The *Markman* Hearing And The District Court's Entry Of A Preliminary Injunction ..................................................................................................................5
    III.   The Federal Circuit's Reversal And Claim Construction. ........................................6

ARGUMENT............................................................................................................................8
    I.     Patent Infringement Cases Such As This May Be Properly Decided By Summary Judgment. ..................................................................................................8
    II.    Lear Is Entitled To Summary Judgment Because Its Car2U® Transmitter Does Not Have A "Binary Code" As Construed By The Federal Circuit. .......................8
         A.    Lear's Car2U® Transmitter Does Not Literally Infringe The '544 Or '123 Patents Because It Operates Using Trinary Numbers, Not Binary Numbers. ..................................................................................9
         B.    Lear's Car2U® Transmitter Does Not Infringe The Asserted '544 Or '123 Patents Under The Doctrine Of Equivalents. ..............................10
    III.   Plaintiffs' Infringement Contentions Depend on Their Disagreement With The Federal Circuit's Claim Construction. ...............................................................12

CONCLUSION......................................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................8

*Chamberlain Group, Inc. v. Lear*,
    516 F.3d 1331 (Fed. Cir. 2008)........................................................................... passim

*Exigent Tech. v. Atrana Solutions*,
    442 F.3d 1301 (Fed. Cir. 2006)................................................................................8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    493 F.3d 1368 (Fed. Cir. 2007)..............................................................................11

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997)..................................................................................8

*Hoganas AB v. Dresser Indus., Inc.*,
    9 F.3d 948 (Fed. Cir. 1993) ....................................................................................12

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) .........................................8

*Research Plastics, Inc. v. Federal Packaging Corp.*,
    421 F.3d 1290 (Fed. Cir. 2005)................................................................................9

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997)..............................................................................11

*TAP Pharm. Prods., Inc. v. Owl Pharm., L.L.C.*,
    419 F.3d 1346 (Fed. Cir. 2005)..............................................................................11

*Tip Sys. LLC v. Phillips & Brooks/Gladwin, Inc.*,
    529 F.3d 1364 (Fed. Cir. 2008)..............................................................................11

*Wahpeton Canvas Co. v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir. 1989)..............................................................................10

*Zygo Corp. v. Wyko Corp.*,
    79 F.3d 1563 (Fed. Cir. 1996)................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ................................................................................................................8

Defendant Lear Corporation ("Lear") respectfully submits this Memorandum of Law in Support of Its Motion for Summary Judgment of Non-Infringement on U.S. Patent No. 6,154,544 ("the '544 patent") or of U.S. Patent No. 6,810,123 ("the '123 patent").

## INTRODUCTION

Lear is entitled to summary judgment on the claims by Plaintiffs The Chamberlain Group LLP ("Chamberlain") and Johnson Controls Interiors LLC ("JCI") that Lear has infringed the '544 and the '123 patents. That conclusion follows ineluctably from the Federal Circuit's decision reversing Plaintiffs' preliminary injunction, adopting Lear's claim construction, and concluding that Plaintiffs lacked a substantial likelihood of success in establishing infringement. Specifically, the Federal Circuit held that to preserve the independent meaning of "binary code" as compared to "trinary code" in the '544 patent, "binary code" must be read as limited to binary numbers and "trinary code" as limited to trinary numbers. Under the Federal Circuit's claim construction, therefore, an essential element of the independent claims of the '544 patent and the '123 patent is the use of binary numbers.

Applying the Federal Circuit's claim construction to the accused Lear Car2U® transmitter, Lear does not infringe the '544 patent or the '123 patent because the Car2U® transmitter software does not use binary numbers. Instead, it is uncontroverted that it operates using trinary numbers.

Lear's Car2U® transmitter also lacks two other critical elements of the independent claims of the '544 patent and the '123 patent, namely, a "binary code generator" and a "trinary code generator for generating a three-valued or trinary code responsive to the variable binary code." Once again, under the Federal Circuit's claim construction, "binary code generator" means a generator of binary numbers and a "trinary code generator" means a generator of trinary numbers. The accused Lear transmitter has neither a binary code generator nor a trinary code

-1-

generator for "generating a three-valued or trinary code responsive to the variable binary code."

Redacted

For each of these independent reasons, as a matter of law, Lear's transmitter cannot infringe either the '544 patent or the '123 patent.

## THE UNDISPUTED FACTS

**I.     Plaintiffs' Claims For Patent Infringement Against Lear**

On June 13, 2005, Chamberlain, owner of the '544 and '123 patents, both entitled "Rolling Code Security System," sued Lear for infringement.[1] (SUF ¶ 5).[2] On October 5, 2005, Chamberlain filed an Amended Complaint. *Id.* JCI, Chamberlain's exclusive licensee, joined in the Amended Complaint as a named Plaintiff. *Id.* On August 19, 2008, Plaintiffs amended their complaint to add U.S. Patent No. 7,412,056 ("the '056 patent"), which is the subject of a separate motion for summary judgment. (SUF ¶ 14).

The '544 and '123 patents are in the same patent family (the '123 patent is a continuation of the '544 patent) and the two share the same specification. (SUF ¶ 9). That specification generally discloses a remote-control garage door opening system, including a transmitter (the remote-control device) and a receiver (usually attached to a mechanical device that operates the

---

[1] Ford Motor Company was also named as a defendant and accused of infringing the '544 and '123 patents, as well as two additional patents that were not asserted against Lear. (SUF ¶ **7.) On October 12, 2006, Ford was dismissed from the lawsuit pursuant to a settlement agreement. (*Id.*)

[2] Lear's citations to the "SUF" are to the accompanying L.R. 56.1 Statement of Undisputed Facts. In addition, any Exhibits cited in this Memorandum are citations to the Exhibits attached to the Statement of Undisputed Facts.

garage door). (SUF ¶ 7.) The transmitter and receiver communicate via an encrypted signal on a radio frequency ("RF") carrier. In the claimed invention, part of the signal changes with each transmission and is therefore referred to as a "variable" code. *Id.* The rest of the signal remains unchanged with each transmission and is therefore called a "fixed code." *Id.* The receiver compares the rolling code and fixed code with stored codes to activate the door opener. *Id.*

The asserted independent claims are claims 1 of the '544 patent and claims 1 and 17 of the '123 patent. (SUF ¶¶ 8, 10.) As independent claims, these are the broadest claims of the patents, and all dependent claims necessarily contain both these same limitations as well as *additional* narrowing limitations. Therefore, if Lear's product does not infringe the independent claims, it cannot infringe any of the dependent claims.

Asserted independent claim 1 of the '544 patent recites its requirement for a "binary code" as shown below in bold:

> Claim 1:
>
> A transmitter for sending an encrypted signal to control an actuator, comprising:
>
> [1] oscillator for generating a radio frequency oscillatory signal;
>
> [2] apparatus for enabling the sending of an encrypted signal;
>
> [3] **binary code generator** responsive to the enabling apparatus for generating a **variable binary code**, said variable code being different for each enabling by the enabling device;
>
> [4] trinary code generator for generating a three-valued or trinary code **responsive to the variable binary code**; and
>
> [5] transmitting apparatus for modulating the radio frequency oscillatory signal with the trinary code to produce a modulated trinary coded variable radio frequency signal for operation or control of a secure actuator.

(SUF ¶ 8) (emphasis added). Asserted independent claim 1 of the '123 patent is, not surprisingly, substantially similar because it stems from the same patent specification:

> Claim 1:
>
> A transmitter comprising:

-3-

>   [1]   an oscillator for generating radio frequency oscillatory signal;
>
>   [2]   a source of a **sequence of binary codes**, successive **binary codes** in the sequence being different from predetermined preceding **binary codes** in the sequence;
>
>   [3]   trinary code generator for **converting said sequence of binary codes** to a sequence of trinary codes; and
>
>   [4]   a transmitting apparatus for modulating the radio frequency oscillatory signal **with the [trinary]³ codes** to produce a modulated trinary coded radio frequency signal.

(SUF ¶ 10) (emphasis added). Finally, the asserted independent claim 17 of the '123 patent also requires the use of binary codes:

>   Claim 17:
>
>   A transmitter for authorizing access to a secure area by a control actuator receiver, comprising:
>
>   [1]   an oscillator for generating a radio frequency oscillatory signal;
>
>   [2]   a **binary code generator** for generating a **sequence of binary codes**, predetermined ones of the **binary codes** being different from others of the **binary codes** of the sequence;
>
>   [3]   a trinary code generator **responsive to the binary codes** for generating three-valued or trinary codes; and
>
>   [4]   a transmitting apparatus for modulating the radio frequency oscillatory signal with the trinary codes to transmit a modulated trinary coded radio frequency signal to the control actuator receiver.

(SUF ¶ 11) (emphasis added).

Because the '123 patent is so similar to the earlier '544 patent, Chamberlain had to file a "terminal disclaimer" to the '123 patent, which means that the '123 patent expires the same day as the '544 patent, because the two patents do not claim distinct inventions. (SUF ¶ 9).

Lear provided Plaintiffs with the software (also called "source code") for its Car2U® transmitter. (SUF ¶ 48). Lear also provided Plaintiffs with additional discovery required by the Court, as well as further materials requested by Plaintiffs, including native "hex" files of Lear's

---

[3] A certificate of correction was issued for the '123 patent changing the word "binary" into "trinary" in the last element of claim 1. (SUF ¶ 10).

software and actual Lear transmitters. *Id.* Redacted

**II. The *Markman* Hearing And The District Court's Entry Of A Preliminary Injunction**

On May 31, 2006, the district court ("the Court") conducted a *Markman* hearing. On September 11, 2006, the Court issued its *Markman* Opinion and Order. In the Order, the Court construed four terms that depend on the understanding of the term "code": "binary code" (claim 1); "binary code generator" (claim 1); "trinary code generator for generating a three-valued or trinary code responsive to the variable binary code" (claim 1); and "apparatus for producing a fixed code signal and for combining said fixed code signal with a rolling code signal" (claim 3). (SUF ¶ 22). The Court defined "binary code" as "a code in which each code element may be either of two distinct kinds of values, which code may represent various kinds of letters and numbers, including, but not limited to, a representation of a base 2 number." (SUF ¶ 24). Under this original construction, a "binary code" was not limited to the representation of a number, but could be a representation of *anything* as long as each code element had "either of two distinct kinds of values" (such as 1 and 0, or "on" and "off," etc.). Of course, as recognized by the Court and parties, a computer operates *exclusively* in 1s and 0s. (SUF ¶ 25).

Plaintiffs moved for a preliminary injunction. They did not dispute that Lear's Car2U® transmitter algorithm operates only on trinary numbers. (SUF ¶¶ 23, 25). Plaintiffs' position was that Lear's product *stored* those numbers in its microprocessor in binary 1s and 0s and therefore contained a "binary code": "So, what do they do? They have a binary code ***that***

*represents a trinary number*. **There is no dispute about that**." (SUF ¶ 25 (emphasis added)). The Court agreed. Based on its *Markman* Order, the Court entered a preliminary injunction against Lear after finding that Plaintiffs were "highly likely" to prove infringement because Lear's numbers – trinary though they were – were still stored as 1s and 0s in Lear's microprocessor and thus constituted a "binary code." (SUF ¶ 25). Lear appealed this Court's grant of a preliminary injunction to the Federal Circuit. (SUF ¶ 26).

### III. The Federal Circuit's Reversal And Claim Construction.

On appeal, Plaintiffs repeated their description of the dispute: "The parties' dispute thus centers around whether *digital* generation of such 'binary-coded *trinary numbers*' constitutes the generation of 'binary codes' as that term is used in claim 4 of the '544 patent." (SUF ¶ 27 (emphasis added).) And, in their main brief on appeal, Plaintiffs told the Federal Circuit: "Lear's accused Car2U transmitter includes a 'binary code generator' **even though** it generates a binary-coded *trinary number*." (SUF ¶ 28 (emphasis added)). There was still no dispute that the Car2U® transmitter uses only trinary numbers in its software program. The dispute was whether those trinary numbers constituted "binary code" because they were stored as 1s and 0s.

On February 19, 2008, the Federal Circuit reversed the Court's claim construction and vacated the preliminary injunction. *Chamberlain*, 516 F.3d at 1340. (*See also* SUF ¶ 29). The Federal Circuit held that the patent specification gives a particular limited meaning to the language in the claims. 516 F.3d at 1337. Specifically, the usage and explanation of the specification requires that the term "binary code" mean a "binary number" *regardless* of how it is "encoded" or stored in the computer. *Id.* at 1339. As the Federal Circuit explained:

> [b]ecause the trinary code of the '544 patent is stored in the transmitter's microcontroller, and the transmitter's microcontroller, like other computers, undisputedly stores and processes data as sequences of 0s and 1s, "*trinary code*" as used in the '544 patent means values stored and processed in the *binary language* of 0s and 1s.

-6-

*Id.* at 1337-38 (emphasis added); (*see also* SUF ¶ 31.) Thus, even though a microcontroller uses 0s and 1s (a "binary" language), that is **not** the same as what the patents claim as a "binary code."

Moreover, the Federal Circuit held that "'binary code' cannot include 'trinary code.' The patent claims and specification, moreover, **do not permit these two terms to overlap**." *Id.* at 1339 (emphasis added); (*see also* SUF ¶ 34). Therefore, to preserve the independent meaning of "binary code" as compared to "trinary code" in the asserted patents, the Federal Circuit read "binary code" as being limited to binary *numbers*, and "trinary code" as limited to trinary *numbers*. 516 F.3d at 1339.

The Federal Circuit's decision essentially deleted most of Plaintiffs' original claim construction of a "binary code," removing reference to any binary decision or comparison, and specifically requiring a binary number. The original construction is presented here, with a strike-through to show the impact of the Federal Circuit decision: "a code in which each code element may be either of two distinct kinds of values, which code may represent various kinds of letters and numbers, including, but not limited to, a representation of a base 2 number." It is not enough simply to use 1s and 0s as in a computer. Instead, a "binary code" has to be understood as a *binary number*. Accordingly, the Federal Circuit explained that Plaintiffs' "'binary-coded *trinary number[s]*' . . . are therefore ***trinary codes***, not binary codes." *Id.* at 1339 (emphasis added). Finally, the Federal Circuit held that "the district court's erroneous interpretation of 'binary code' also necessarily renders incorrect its construction of these other terms." *Id.*

For all these reasons, the Federal Circuit also vacated the conclusion that Plaintiffs had a substantial likelihood of prevailing on their infringement claims, and vacated the preliminary

injunction. *Id.* at 1340; (*see also* SUF ¶ 38). Plaintiffs subsequently filed a combined petition for panel rehearing and rehearing *en banc*, which was denied. (SUF ¶ 39).

## ARGUMENT

### I. Patent Infringement Cases Such As This May Be Properly Decided By Summary Judgment.

As this Court is well aware, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Importantly, it remains Plaintiffs' burden to prove infringement, even upon Lear's motion for summary judgment. *Exigent Tech. v. Atrana Solutions*, 442 F.3d 1301 (Fed. Cir. 2006) (holding patentee maintains burden of proof of infringement even on accused infringer's motion for summary judgment); *see generally Celotex*, 477 U.S. at 322-23 (holding burden of proof remains with plaintiff even on defendant's summary judgment).

### II. Lear Is Entitled To Summary Judgment Because Its Car2U® Transmitter Does Not Have A "Binary Code" As Construed By The Federal Circuit.

An infringement analysis involves two steps: (1) the claim must be construed, and (2) the properly construed claim must be compared to the allegedly infringing device. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Infringement is established only if "every limitation of the patent claim [is] found in the accused infringing device." *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997). Here, the Federal Circuit has already provided the relevant claim construction. This Court has already found that construction "is the law of the case." (D.I. 319, 4/16/09 Op. at 4). Furthermore, there is no dispute about the operation of Lear's software as to these claim terms. Summary judgment is therefore proper.

### A. Lear's Car2U® Transmitter Does Not Literally Infringe The '544 Or '123 Patents Because It Operates Using Trinary Numbers, Not Binary Numbers.

The asserted independent claims claim either a "binary code" from a "binary code generator"[4] (*see* '544 patent, claim 1, and '123 patent, claim 17), or a "sequence of binary codes" ('123 patent, claim 1). They also claim a "trinary code generator" that is "responsive to" the binary codes ('544 patent, claim 1; '123 patent, claim 17) or that is used "for converting [the] sequence of binary codes to a sequence of trinary codes." (SUF ¶¶ 8, 10, 11).



Lear therefore does not and cannot infringe, because its product does not contain "binary code," a "binary code generator" or a "trinary code generator [that is] responsive to" or that "convert[s]" binary codes. *Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290, 1297 (Fed. Cir. 2005). ("The absence of any limitation of the asserted claim defeats literal infringement.").

---

[4] For the purposes of this motion, it is assumed that the claim term is not a means-plus-function term, which gives Plaintiffs the benefit of the doubt by having a potentially broader scope, and by not insisting upon the additional requirements of identifying a specific structure for any means-plus-function terms. However, Lear reserves its rights to show that the "generator" terms are in fact claimed in "means-plus-function" format, should this motion be denied.

-9-



Redacted

Because it does not use a binary number, Lear's product cannot infringe. Additionally, the dependent claims of each patent are not infringed because they depend from the independent claims that are not infringed. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed."). Accordingly, summary judgment of non-infringement should be entered.

### B. Lear's Car2U® Transmitter Does Not Infringe The Asserted '544 Or '123 Patents Under The Doctrine Of Equivalents.

The Federal Circuit's understanding and analysis of the shared specification of the '544 and '123 patents is instructive on the question of the doctrine of equivalents as well. The Federal Circuit was careful to note that with respect to the claim terms "binary code" and "trinary code," the "patent claims and specification, moreover, ***do not permit these two terms to overlap***," *Chamberlain Group*, 516 F.3d at 1339 (emphasis added). The Federal Circuit noted that "the trinary code is '*responsive to*' the binary code"; that "the rolling binary code '*is changed to*' trinary code by the transmitter"; and that "the transmitter '*converts*' the 32-bit codes (which are binary) to trinary codes." *Id.* (citations omitted, emphasis added). In other words, a key facet of the invention is that it employs **both** the binary and trinary number systems to encrypt the codes sent to the garage door opener receiver.

In order to infringe under the doctrine of equivalents, there must be an equivalent of *each and every* claim element. *Tip Sys. LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1377 (Fed. Cir. 2008) ("the 'all elements' rule is applicable to infringement under the doctrine of equivalents just as it is to literal infringement."). The doctrine of equivalents does not grant "license to remove entirely [any of the] limitations from the claim." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997); *see also TAP Pharm. Prods., Inc. v. Owl Pharm., L.L.C.*, 419 F.3d 1346, 1353-54 (Fed. Cir. 2005) (finding no infringement where it "would vitiate an essential limitation of the claim"). [Redacted]

[Redacted] Such a theory of equivalence would completely vitiate the claim element of a "binary code," an element which is separate and cannot overlap, according to the Federal Circuit, with the claim element of a "trinary code." Lear's accused product cannot infringe under the doctrine of equivalents.

[Redacted]

Specifically, Dr. Clifford Kraft obtained U.S. Patent No. 7,589,613 regarding the use of an all-trinary software program and assigned that patent to Lear. (SUF ¶¶ 62, 72, 73). That fact means that the accused product is patentably distinct and substantially different from the asserted patents, foreclosing relief under the doctrine of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1380 n.9 (Fed. Cir. 2007) ("[T]here is a strong argument that an equivalent cannot be both non-obvious and insubstantial."). That is all the more so where, as here, the patent shows on its face that it was issued *over* the asserted patents in this case. (SUF ¶ 75; Ex. 29 at LEAR 8769). In other words, Chamberlain's asserted '544 and '123

patents in this case *were cited to the Patent Office* during the prosecution of the Kraft '613 patent. *Id.*; *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 (Fed. Cir. 1993) ("In support of our conclusion [that the doctrine of equivalents is inapplicable], we note that the Patent & Trademark Office (PTO) granted to Dresser a patent . . . **with knowledge of the [asserted patent] which is listed as art of record**") (emphasis added); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996) (same). Lear's Car2U® product simply cannot infringe the '544 or '123 patents either literally or under the doctrine of equivalents.

**III.    Plaintiffs' Infringement Contentions Depend on Their Disagreement With The Federal Circuit's Claim Construction.**

The Federal Circuit's decision has eviscerated Plaintiffs' theory of infringement. Simply put, because a "binary code" means a "binary number," it is immaterial how Lear's trinary numbers are encoded at the computer microprocessor level, where 1s and 0s predominate. When Lear initially moved for summary judgment in light of the Federal Circuit's opinion, this Court denied Lear's motion as premature, and afforded Plaintiffs the opportunity for more discovery on Lear's product. Plaintiffs have now had that opportunity, by evaluating Lear's sample devices and software (in both native and text formats), taking depositions, and submitting expert reports.



-12-

-13-

Redacted

Redacted

Redacted

Redacted

Redacted

The Federal Circuit's claim construction precludes this type of computer-level argument. Yet Plaintiffs resurrect it anyway, aiming to paint a very technically complicated picture, hoping to dodge summary judgment. When all is said and done, however, Lear's Car2U® uses trinary numbers, and not binary numbers. The Federal Circuit's analysis controls, and Plaintiffs' arguments can be rejected for the same reasons they were rejected by that court. Lear is entitled to summary judgment.

## CONCLUSION

Because there are no material issues of fact that remain as to these claim terms, and because no reasonable jury could find in favor of Plaintiffs when properly applying the Federal Circuit's claim construction, Lear respectfully requests that this Court grant summary judgment of non-infringement as to the '544 and '123 patents.

Dated: March 18, 2010                                 Respectfully submitted,

                                                By: /s/Kimball R. Anderson
                                                    Kimball R. Anderson
                                                    Imron T. Aly
                                                    Kathleen B. Barry
                                                    Ivan M. Poullaos

-15-

        Winston & Strawn LLP
        35 West Wacker Drive
        Chicago, IL 60601
        kanderson@winston.com
        ialy@winston.com
        kbarry@winston.com
        ipoullaos@winston.com

        *Attorneys for Defendant and*
        *Counterclaim Plaintiff Lear Corporation*

**CERTIFICATE OF ELECTRONIC SERVICE**

       I hereby certify that on March 18, 2010, I electronically filed the foregoing **LEAR CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '544 AND '123 PATENTS** with the Clerk of the Court for the Northern District of Illinois using the ECF System, which will send notification to counsel of record. I also certify that I have sent the paper by United States Postal Service to the following counsel:

| | |
|---|---|
| Ruffin B. Cordell (DC #4458051)<br>FISH & RICHARDSON P.C.<br>1425 K Street, N.W.<br>Washington, D.C. 20005-3500<br>Telephone: (202) 783-5070 | Karl Regan Fink<br>John F. Flannery<br>Rudy L Kratz<br>Joseph F. Marinelli<br>FITCH, EVEN, TABIN & FLANNERY<br>120 South La Salle Street, Suite 1600<br>Chicago, IL 60603-3406<br>Facsimile: (312) 577-7007 |
| Katherine Kelly Lutton (CA #194971)<br>Tamara Fraizer<br>Katherine D. Prescott (CA #215496)<br>FISH & RICHARDSON P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063-1526<br>Telephone: (650) 839-5070 | Attorneys for Co-Plaintiff<br>*THE CHAMBERLAIN GROUP, INC.* |
| Frederic R. Klein (#3127304)<br>Frederick H. Cohen (#6204002)<br>GOLDBERG KOHN<br>55 East Monroe Street, Suite 3300<br>Chicago, Illinois 60603<br>Telephone: (312) 201-4000 | |
| Attorneys for Plaintiff ,<br>*JOHNSON CONTROLS INTERIORS, LLC.* | |

                                                     /s/ Kimball R. Anderson
                                                        Kimball R. Anderson
                                                        Imron T. Aly
                                                        Kathleen B. Barry
                                                        Ivan M. Poullaos
                                                        Winston & Strawn LLP
                                                        35 West Wacker Drive
                                                        Chicago, IL  60601
                                                        kanderson@winston.com
                                                        ialy@winston.com
                                                        kbarry@winston.com
                                                        ipoullaos@winston.com