IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., and JOHNSON CONTROLS INTERIORS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LEAR CORPORATION, <br><br> Defendant. | ) Civil Action No.: 05 C 3449 <br> ) <br> ) The Honorable Amy J. St. Eve <br> ) <br> ) Magistrate Judge Morton Denlow <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) PUBLIC VERSION <br> ) |

### CHAMBERLAIN'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER
### FILED UNDER SEAL

Chamberlain moves, pursuant to Fed.R.Civ.P. 26(c), for a protective order precluding Lear from deposing Chamberlain on Topics 4, 5, and 9 of Lear's 30(b)(6) notice, and from seeking related documents. The discovery that Lear seeks is irrelevant and would impose an enormous burden on Chamberlain, one that substantially outweighs any probative value to Lear.

Chamberlain also moves for a protective order precluding Lear from taking further discovery into Chamberlain's ongoing development                    Chamberlain's                    has nothing to do with this lawsuit, and Lear's discovery requests concerning the                    are irrelevant. Moreover, Chamberlain's development efforts for this                    constitute trade secrets of Chamberlain. It would be unfair and overly burdensome to Chamberlain to have to divulge the details of the

Finally, Chamberlain moves for an order precluding Lear from re-deposing Mr. Fitzgibbon, a senior Chamberlain engineer and key Chamberlain employee. Lear has deposed

1

Mr. Fitzgibbon twice already, in excess of the seven hours allotted under the rules. Nonetheless, Lear has insisted that it is entitled to a *third* deposition of indeterminate length. Lear has shown no reason why two depositions were not enough, and the Court should preclude Lear from further depositions.

### I.  LEAR'S 30(b)(6) NOTICE AND ASSOCIATED DOCUMENT REQUESTS

On April 1, 2010, Lear served Chamberlain with a notice of deposition pursuant to Rule 30(b)(6) deposition (copy attached as Ex. 1). Among the noticed topics is topic 4, calling for the "sales, revenues, costs, and profits for each sold product allegedly encompassed by any claims of the Asserted Patents." This topic also purports to require the 30(b)(6) witness to "address financial information and spreadsheets," including "questions about such facts as the gross sales, cost of goods sold, costs of development, royalties, and profit":

> 4. The sales, revenues, costs, and profits for each sold product allegedly encompassed by any claims of the Asserted Patents. The person prepared to address this topic should address financial information and spreadsheets relating to allegedly patented products, including questions about such facts as the gross sales, cost of goods sold, costs of development, royalties, and profits.

Topic 9 of Lear's 30(b)(6) asks for the effect of Lear's infringing Car2U product on the "sales, revenues, and/or profits" of Chamberlains products. Topic 5 asks for Chamberlain to allocate its sales, revenues, and profit information as between patented and unpatented features. Lear's topics seek this information, not only for Chamberlain's transmitters, but for Chamberlain's garage door openers as well – a product not at issue in this case.

On the same day, Lear served Chamberlain with its fourth set of production requests (copy attached as Ex. 2). These requests similarly are all-encompassing, and purport to require Chamberlain to produce essentially all of Chamberlain's financial information. For instance,

Lear's request no. 7 asked for documents showing sales, revenues, costs, and profits for all Chamberlain transmitters and receivers:

> 7. Documents showing the sales, revenues, costs (costs of goods sold, manufacturing, and development), and profits for each sold product allegedly encompassed by any claims of the Asserted Patents.

Topic 19 seeks, on a yearly basis, gross sales, cost of goods sold, costs of development, and other items:

> 19. Documents sufficient to identify the sales, costs, and profits and/or losses generated concerning the Asserted Patents or any products allegedly encompassed by claims of the Asserted Patents, including but not limited to on a yearly basis, the gross sales, cost of goods sold, costs of development, royalties, and profits.

Many other requests similarly seek the production of Chamberlain's financial information. Lear also served an interrogatory requesting Chamberlain to provide similar information.

The information sought by Lear might have some relevance if Chamberlain were seeking damages by way of lost profits. On June 1, 2010, however, Chamberlain amended its response to Lear's damages interrogatory to clarify that Chamberlain is *not* seeking its lost profits. Ex. 3, Chamberlain supplemental interrogatory response dated June 1, 2010. Similarly, Chamberlain wrote to Lear on June 3, to explain that Chamberlain was not seeking lost profits. Ex. 4, email of Karl Fink to Ivan Poullaos dated June 3, 2010.

Nonetheless, despite Chamberlain's stipulation, Lear's counsel wrote back immediately to persist in its demand for this information. Ex. 5, email of Imron Aly to Karl Fink dated June 3, 2010. Chamberlain subsequently offered to produce information concerning its transmitter

3

sales volume only (which is more readily accessible), but Lear deemed this offer insufficient. In subsequent discussions between the parties, Lear maintained its demand for this information.

Chamberlain has manufactured the patented garage door openers and has sold a large number of units. The information that Lear seeks would encompass the majority of financial information that Chamberlain has generated    This information is contained in archived computer systems and paper records. Responding to Lear's 30(b)(6) topics would be a mammoth undertaking, one that would require substantial work for Chamberlain and its counsel. Indeed, a complete response to Lear's deposition topics and document requests would require the assistance of financial experts. While Chamberlain has already has produced a number of financial documents, a complete explication of Chamberlain's finances    would be a huge undertaking.

As Lear would have it, Chamberlain should spend the last several weeks of discovery scouring all of its financial records    and should gather and produce all information concerning all of its revenues
Lear also demands that Chamberlain scour its records for cost information for these same products. Lear also wants Chamberlain to prepare a witness to address financial information and spreadsheets, and to testify about "gross sales, cost of goods sold, costs of development, royalties, and profit" and other such topics. Again, this would require significant effort for Chamberlain and its counsel. Given Chamberlain's stipulation that it will not be seeking lost profits, Lear has no need for the information it demands from Chamberlain, much less does Lear have the right to demand that Chamberlain undertake the massive effort required to produce the information. Chamberlain accordingly seeks a protective order.

4

Lear argues that, despite Chamberlain's stipulation, it is entitled to the information for two reasons, but Lear is wrong in each case. First, Lear argues that the Chamberlain financial information might be relevant to other, unspecified damages theories. Ex. 5 ("we are entitled to discovery in order to probe issues related to damages"). This argument is unavailing. Lear's hand-waving allusion to "issues relating to damages" does not support its position. Chamberlain should not have to provide a witness on every financial aspect of its garage door opener sales merely because Lear wants to "probe issues related to damages."

Second, Lear argues that Chamberlain's profitability is relevant to commercial success of the patented transmitter. In patent law, the commercial success of a patented invention is a relevant factor in determining nonobviousness, the notion being that inventions that are commercially successful are probably not obvious. Chamberlain believes, and plans to argue to the jury, that the patented invention has enjoyed commercial success. Nonetheless, Chamberlain's position on commercial success does not entitle Lear to every scrap of Chamberlain's financial information.

It is well settled that "the question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages." *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 259 (D.N.J. 1997) (*following Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1116 (D. Del. 1984)), *vacated on other grounds*, 215 F.3d 1349 (Fed. Cir. 1999). This means that Lear is not entitled to the massive amounts of information it seeks. For instance, in *Chubb Integrated Systems Limited v. The National Bank of Washington*, 103 F.R.D. 52 (D.D.C. 1984), the court denied a motion to compel profit information that was allegedly relevant to commercial success. Although the court compelled

production of sales figures (as Chamberlain has offered), the court held that the remaining financial information sought by the defendant was "not probative of commercial success." *Id.* at 57 (denying motion to compel). *Cf. Dynacore Holdings Corporation v. U.S. Philips Corporation*, 2002 U.S. Dist. LEXIS 18666, at *9 (S.D.N.Y. 2002) (copy attached as Ex. 6) (denying motion for protective order because defendant sought only price and sales information; request "does not seek profit margins or other indicia of profitability. Its request is thus narrowly tailored to the issue of commercial success"), *aff'd*, 363 F.3d 1263 (Fed. Cir. 2004). The discovery that the court denied in *Chubb* was significantly *less* detailed than the information sought here by Lear, and this holding applies with even more force here. *See also Lemelson v. Apple Computer, Inc.*, 1993 U.S. Dist. LEXIS 20128 (D. Nev. 1993) (copy attached as Ex. 12) (bifurcating damages phase of trial despite potential overlap between damages and commercial success because proof of commercial success "can be done with minimal information regarding sales. Detailed financial information is not necessary to prove commercial success. . . .").

Additionally, Lear sells only a transmitter (a unit mounted in an automobile), and does not sell a garage door opener (the motor and electronic circuitry that are housed within the garage). Chamberlain asserts only the claims of the patents in suit that pertain to transmitters. Yet Lear's discovery requests seek financial information for *all* products covered by the patents in suit. Some Chamberlain patent claims are directed towards other components of a garage door opener system, such as the receiver. Lear's discovery requests thus encompass information concerning both Chamberlain's transmitters and its garage door openers. Chamberlain's garage door openers are not at issue in this suit. To the extent that financial information is relevant to commercial success, Lear cannot justify the scope of its request for financial information.

Chamberlain is prepared to provide a witness to testify as to sales volume of its universal and replacement transmitters. These figures alone will establish commercial success of the patented invention. But it would be unfair and an enormous burden to Chamberlain to provide a witness to gather and testify to the mountains of additional information that Lear seeks. Such information would not support or refute Chamberlain's commercial success argument, and Chamberlain likewise does not see how this information is relevant to any other issue. To the extent that such information has theoretical relevance to other aspects of this lawsuit, the burden to Chamberlain of producing this information overwhelmingly outweighs any probative value, and Lear's discovery request serves merely to harass Chamberlain. Accordingly, Chamberlain seeks a protective order against providing a witness to testify on the indicated 30(b)(6) topics.

**II.    CHAMBERLAIN'S**

Chamberlain is in the progress of developing

and Lear is not entitled to the discovery it seeks.

The issues in this lawsuit involve Chamberlain's three patents in suit, the validity of those patents, Lear's infringement of those patents, and damages for the infringement. Neither Chamberlain's developmental ⁚                                                                                      are relevant to these issues.

Yet Lear repeatedly has sought discovery into  and other Chamberlain developmental technology.

On May 14, Lear served a production request (Ex. 7) in which it demanded production of all information concerning Chamberlain's 

Subsequently, on May 25, Lear deposed Mr. Fitzgibbon, a senior engineer at Chamberlain and an inventor of the patents in suit. Lear's counsel repeatedly peppered Mr. Fitzgibbon with questions

---

[1] In each case, Lear withdrew the questions after Chamberlain indicated it otherwise would move for a protective order.

8

*See* Ex. 8, excerpts from May 25, 2010 Fitzgibbon transcript, at 384, 386, 387. 388, 437, 441. After the conclusion of the Fitzgibbon deposition, Lear indicated that it intended to press forward with discovery concerning  Ex. 9, email from Imron Aly to Karl Fink dated May 27, 2010.

Subsequently, at the June 3, 2010 deposition of Paul Lambert, a JCI employee, Lear inquired into certain details of  The Lambert transcript is not yet available, but at that deposition Lear inquired repeatedly into  and JCI's knowledge of it.

These matters have nothing to do with the issues in this lawsuit. Chamberlain's  and associated development efforts are trade secrets of Chamberlain, and they have nothing to do with this lawsuit: The  has no bearing on Lear's infringement of the patents. The infringement issues concern Lear's product and the patents in suit, not  The  has no bearing on the validity of the patents, which have an effective filing date in 1995. Nor does the  have anything to do with damages.

. The  simply has no relevance to this case.

Notably, Lear withheld the algorithms *for the accused Car2U product* to the extent that these algorithms not implicate the Chamberlain existing algorithm. Lear's Car2U product itself includes algorithms for other garage door manufacturers, but Lear has withheld those algorithms

9

from discovery. Lear is seeking to have it both ways – Lear wants to withhold its algorithm technology to the extent unrelated to this lawsuit, even where the accused product contains this technology, but at the same time Lear demands discovery of Chamberlain's unrelated

. Lear's approach is unfair and inappropriate.

The Court should preclude Lear from seeking further discovery of Chamberlain's

### III. MR. FITZGIBBON

Generally, the rules specify that a witness should be deposed no longer than one day of seven hours. Fed. R. Civ. Proc. 30(d)(1). Lear earlier deposed Mr. Fitzgibbon during the preliminary injunction phase of the lawsuit, and later deposed Mr. Fitzgibbon on May 25 for a full seven hours. In total, Lear has deposed Mr. Fitzgibbon for about nine hours. Yet Lear's counsel has repeatedly insisted that Lear is entitled to a continued, indefinite deposition of Mr. Fitzgibbon. Mr. Fitzgibbon is a key Chamberlain employee and the Court should protect him and Chamberlain from Lear's efforts to depose him a third time.

For instance, near the end of the Fitzgibbon deposition, Mr. Aly indicated that he had "half a box" of materials yet to cover, with "a lot of material to get through":

> MR. ALY: We've got a lot of things -- I've got a half a box
> materials to go through. So, you know, we've got a lot of material
> to get through.

Ex. 8, excerpts from May 25, 2010 Fitzgibbon transcript, at 441. At the conclusion of the seventh deposition hour on May 25, Mr. Aly insisted that he had "plenty of additional information" to cover:

> MR. FINK: Seven hours is up. So we're ending the deposition now.
>
> MR. ALY: As I said, there is a lot more information.
>
> . . .
>
> MR. HOOVER: We're all finished I think.
>
> MR. ALY: Oh. So you are walking out of the deposition?
>
> MR. FINK: Yes. We're done.
>
> MR. ALY: No, I don't think we're done at all. We have plenty of additional information.

*Id.* at 452. Mr. Aly then wrote to counsel for Chamberlain (Ex. 10, letter from Imron Aly to Allen Hoover dated June 1, 2010) and to counsel for JCI (Ex. 11, email from Imron Aly to Tamara Fraizer dated June 1, 2010) demanding that Lear be allowed to re-depose Mr. Fitzgibbon on several additional topics, including the issue discussed above (Ex. 10), work product efforts and privileged communications (Ex. 10) and a single document produced by JCI after the deposition (Ex. 11).

Lear has no cause to re-depose Mr. Fitzgibbon. Lear has deposed in total for almost nine hours in this lawsuit, and it is obvious from Mr. Aly's comments at the deposition that Lear has no intention of honoring the single deposition and seven hour limits provided under the rules. It would be Lear's burden to demonstrate a need for further deposition, but Lear has not met this burden. Except for its demands for testimony about Chamberlain's ҅ Lear has not identified the "plenty of additional information" that it wanted from Mr. Fitzgibbon.

The only specific topic identified by Lear is a single document that JCI produced after the deposition. Lear insists (Ex. 11) that it is "entitled to his testimony on that document." The document in question is a cover letter forwarding a code specification to a JCI employee, Jim Robillard. The text of the letter reads in its entirety as follows:

11

> Jim
>
> Attached is the ᴿᵉᵈᵃᶜᵗᵉᵈ specification. Thank you for getting the letter to me so quickly. If you need more information or a visit just give me a call.
>
> I would be very interested in you evaluation of the ⎯⎯⎯⎯. It would be nice if we could see a demonstration of it some time in the future.
>
> *[signature]*
> Jim Fitzgibbon

On the basis of this cover letter, Lear wants to re-depose Mr. Fitzgibbon. Chamberlain disagrees. This single letter does not justify a third deposition of Mr. Fitzgibbon.

Lear has deposed Mr. Fitzgibbon twice already, in excess of seven hours, and Lear has made no showing that additional depositions are necessary.[2] To the contrary, Lear's continued efforts to depose Mr. Fitzgibbon border on harassment. The Court should preclude Lear's further efforts to re-depose Mr. Fitzgibbon.

## IV. CONCLUSION AND L.R. 37.2 CERTIFICATION

For these reasons, the Court should issue a protective order as outlined above.

A Chamberlain attorney, Allen E. Hoover, met with a Lear attorney, Imron Aly, in person near the offices of Winston & Strawn on June 3, 2010 to attempt to resolve this dispute under L.R. 37.2 and the Court's case management procedures. The parties' efforts were not successful.

---

[2] Chamberlain is continuing to produce documents, and is willing to revisit the issue to the extent that any newly produced documents involve Mr. Fitzgibbon.

12

Date:  <u>June 7, 2010</u>                     <u>/s/ Karl R. Fink</u>
                                                Karl R. Fink
                                                Rudy I. Kratz
                                                Joseph F. Marinelli
                                                Allen E. Hoover
                                                FITCH, EVEN, TABIN & FLANNERY
                                                120 South LaSalle Street, Suite 1600
                                                Chicago, Illinois 60603
                                                Telephone: (312) 577-7000
                                                Facsimile: (312) 577-7007

                                                *Attorneys for The Chamberlain Group, Inc.*

CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing PUBLIC VERSION OF CHAMBERLAIN'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER is being served via email on:

| COUNSEL FOR PLAINTIFF, JOHNSON CONTROLS INTERIORS | COUNSEL FOR DEFENDANT, LEAR CORPORATION |
|---|---|
| Ruffin B. Cordell (cordell@fr.com)<br>FISH & RICHARDSON PC<br>1425 K Street, NW<br>11th Floor<br>Washington, DC 20005<br>Telephone: (202) 783-5070<br>Facsimile: (202) 783-2331 | Kimball R. Anderson (kanderson@winston.com)<br>Kathleen B Barry (kbarry@winston.com)<br>Samuel Mendenhall (smendenhall@winston.com)<br>Imron T. Aly (ialy@winston.com)<br>Ivan M. Poullaos (ipoullaos@winston.com)<br>WINSTON & STRAWN LLP<br>35 West Wacker Drive<br>Chicago, Illinois 60601<br>Telephone: 312-558-5600<br>Facsimile No.: 312-558-5700 |
| Katherine Kelly Lutton (lutton@fr.com)<br>Tamara Fraizer (fraizer@fr.com)<br>Scott A. Penner (penner@fr.com)<br>FISH & RICHARDSON P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, California 94063-1526<br>Telephone: (650) 839-5070<br>Facsimile: (650) 839-5071 | Thomas A. Lewry (tlewry@brookskushman.com)<br>Frank A. Angileri (fangileri@brookskushman.com)<br>BROOKS KUSHMAN P.C.<br>1000 Town Center<br>22nd Floor<br>Southfield, Michigan 48075<br>Telephone: 248-358-4400<br>Facsimile: 248-358-3351 |
| Frederic R. Klein (Frederic.klein@goldbergkohn.com)<br>GOLDBERG, KOHN, BELL, BLACK, ROSENBLOOM & MORITZ, LTD.<br>55 East Monroe Street, Suite 3300<br>Chicago, Illinois 60603<br>Telephone: (312) 201-4000<br>Facsimile: (312) 332-2196 | |

Attorneys for Defendant and JCI, this June 8, 2010.

/s/ Allen E. Hoover
*One of the Attorneys for The Chamberlain Group, Inc.*

14