# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | **Sitting Judge if Other than Assigned Judge** | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 3449 | **DATE** | 7/13/2010 |
| **CASE TITLE** | Chamberlain Group vs. The Lear Corp et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff Chamberlain Group, Inc.'s motion for a protective order [498] is granted in part and denied in part.

■ [ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

    Plaintiff Chamberlain Group, Inc. ("Chamberlain") has filed a motion ("Motion") for a protective order, seeking to preclude Defendant, Lear Corporation ("Lear"), from (1) obtaining certain financial information from Chamberlain, (2) taking discovery related to Chamberlain's development of a new algorithm, and (3) further deposing Jim Fitzgibbon. For the following reasons, the Court grants in part and denies in part the Motion.

### LEGAL STANDARD

    The Federal Rules of Civil Procedure provide that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The moving party bears the burden of showing good cause for a protective order. *See ISA Chicago Wholesale, Inc. v. Khan*, No. 09 CV 3942, 2010 WL 2266463, at *2 (N.D. Ill. June 3, 2010); *Johnson v. Jung*, 242 F.R.D. 481, 482 (N.D. Ill. 2007).

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

## ANALYSIS

**I. 30(b)(6) Deposition Topics 4, 5, and 9 and Related Discovery Requests**

On April 1, 2010, Lear served Chamberlain with a Federal Rule of Civil Procedure 30(b)(6) notice of deposition requesting – among other things – that Chamberlain designate one or more persons to testify regarding:

- "The sales, revenues, costs, and profits for each sold product allegedly encompassed by any claims of the Asserted Patents. The person prepared to address this topic should address financial information and spreadsheets relating to allegedly patented products, including questions about such facts as the gross sales, cost of goods sold, costs of development, royalties, and profits." (R. 500-1, Ex. 1, Def.'s R. 30(b)(6) Notice of Dep. of Chamberlain at Topic 4.)

- "The portion of sales, revenues, profits, or other value of each sold product allegedly encompassed by any claims of the Asserted Patents (such as Chamberlains' [sic] Security + Code Guard, and Clicker products) that is attributable to the alleged invention in those patents, and the factual basis for this attribution." (*Id.* at Topic 5)

- "Evaluation of Lear's Car2U product and its potential and/or actual effect on the sales, revenues, and/or profits of Chamberlain's Security +, Code Guard, and Clicker products, and any other products allegedly encompassed by any claims of the asserted Patents." (*Id.* at Topic 9)

On the same day, Lear served Chamberlain with a fourth set of document requests that seek certain Chamberlain financial information. Request 7, for example, seeks "[d]ocuments showing the sales, revenues, costs (costs of good sold, manufacturing, and development), and profits for each sold product allegedly encompassed by any claims of the Asserted Patents." (R. 500-1, Ex. 2, Def.'s 4th Set of Doc. Reqs.) Further, Request 19 seeks "[d]ocuments sufficient to identify the sales, costs, and profits and/or losses generated concerning the Asserted Patents or any products allegedly encompassed by claims of the Asserted Patents, including but not limited to on a yearly basis, the gross sales, cost of goods sold, costs of development, royalties, and profits." (*Id.*)

Two months later, on June 1, 2010, Chamberlain amended its answer to Lear's Interrogatory 20, which asks Chamberlain to "[i]dentify the rationale for, calculation, and amount of damages Chamberlain contends it is owed for the alleged patent infringement in this case, including an explanation for the basis of the royalty set forth in Chamberlain's license to [Plaintiff Johnson Controls Interiors LLC ('JCI')]." (R. 500-1, Ex. 3, Chamberlain's Supplemental Resps. & Objections to Lear's 3d Set of Interrogs.) Chamberlain answered, in relevant part: "The interrogatory calls for Chamberlain's contention as to damages, and Chamberlain has not yet formed its contention. . . . Chamberlain states that its claim for damages for Lear's infringement will be based on the lost profits Chamberlain accrued as a result of diverted sales of licensed JCI transmitters caused by Lear's infringement of the patents-in-suit." (*Id.*) Counsel for Chamberlain further wrote to counsel for Lear on June 3, 2010, clarifying that: "Chamberlain is limiting its damage claim to the lost payments from JCI under the exclusive license agreement, plus treble damages, costs, attorneys fees and interest. Thus, Chamberlain is making no claim to lost Chamberlain transmitter or other product sales." (R. 500-1, Ex. 4, 6/3/10 Email.)

Chamberlain argues that these finance-related requests seek information that (1) is irrelevant because "Chamberlain is *not* seeking its lost profits" (R. 500-1, Mem. in Supp. of Mot. at 3 (emphasis in original)), and (2) would require a "mammoth undertaking, one that would require substantial work for Chamberlain and its counsel." (*Id.* at 4). The requested information is discoverable because (1) it is relevant, and (2) Chamberlain has

not shown that producing it would create an undue burden.

In arguing that the information that Lear seeks is irrelevant, Chamberlain faces a high hurdle, as "[t]he *Federal Rules of Civil Procedure* broadly permit parties in litigation to obtain discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Bond v. Uteras*, 585 F.3d 1061, 1067 (7th Cir. 2009) (quoting Fed. R. Civ. P. 26(b)(1)); *see also Jung*, 242 F.R.D. at 482 (noting that "the Federal Rules of Civil Procedure provide for liberal discovery"). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). While Chamberlain argues that the requested information is irrelevant because it is not seeking lost-profit damages, its own interrogatory answer provides that its damages will be based on "lost profits." (*See* R. 500-1, Ex. 3, Chamberlain's Supplemental Resps. & Objections to Lear's 3d Set of Interrogs.) Additionally, Chamberlain is seeking lost-royalty damages, and it does not dispute that profitability is a relevant factor in calculating such damages. (*See* R. 538, Reply Br. at 4-5.) Further, the requested information is relevant because it appears reasonably calculated to lead to the discovery of admissible evidence of the invention's commercial success and Plaintiff JCI's lost profits, which Plaintiff JCI seeks as damages. As such, Plaintiff Chamberlain has not shown that this information is irrelevant.

Additionally, Plaintiff Chamberlain has not established that producing the requested information would be unduly burdensome. Beyond alleging that the requested information relates to "the millions of units that Chamberlain has sold" (R. 500-1, Mem. in Supp. of Mot. at 4), Chamberlain does little to specify the burden that producing the information would entail. This is not enough to warrant a protective order. *See Jung*, 242 F.R.D. at 483 ("Conclusory statements of hardship are not sufficient to carry [the burden of establishing entitlement to a protective order]."); *Silva v. Fortis Benefits Ins. Co.*, 437 F. Supp. 2d 819, 827 (N.D. Ill. 2006) ("In order to establish good cause [for a protective order], there must be a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."). Accordingly, Chamberlain has not shown that providing the information would impose an undue burden, and it is not entitled to a protective order regarding this information.

## II.     Chamberlain's Development of a New Algorithm

Chamberlain seeks to prevent Defendant from obtaining discovery related to an algorithm that Chamberlain is purportedly developing for a new garage-door-opening system. According to Chamberlain, it has not sold any garage door openers or transmitters that use the algorithm. Defendant responds that Plaintiff JCI has sold garage door openers that use the new algorithm and has already produced information related to the algorithm. Furthermore, Defendant argues that the new algorithm is relevant to reasonable-royalty damages. Whether or not Chamberlain implements the new technology is not relevant to a reasonable-royalty determination, however, because "[a] 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010).

Defendant's remaining arguments regarding the purported relevance of the new algorithm fare no better. The new algorithm is not relevant to the obviousness determination, and Plaintiff JCI's decision to produce documents related to the algorithm does not render the algorithm-related information relevant. Because this information is not relevant to the claims or defenses in this case, it is not discoverable.

## III.    Jim Fitzgibbon Deposition

Finally, Chamberlain asks the Court to prevent Defendant from further deposing Jim Fitzgibbon, a Chamberlain employee. Defendant has already deposed Mr. Fitzgibbon for two hours during the preliminary-

injunction phase of this action and for seven hours on May 25, 2010. After Chamberlain's counsel terminated Mr. Fitzgibbon's latter deposition after seven hours, Defendant's counsel wrote to Plaintiffs' counsel to request additional time to depose Mr. Fitzgibbon on additional topics, including a four-sentence letter that Mr. Fitzgibbon authored and which Chamberlain produced after Mr. Fitzgibbon's deposition.[1]

Defendant takes issue with the conduct of Plaintiffs' counsel at Mr. Fitzgibbon's deposition, arguing that "[h]ad Chamberlain not refused to allow Fitzgibbon to answer questions at the deposition, he would not have to be recalled." (R. 533, Lear's Response Br. at 7.) In support of that argument, Defendant points to two pages of Mr. Fitzgibbons's deposition transcript. That excerpt, however, together with the deposition excerpts to which Chamberlain points, shows that Plaintiffs' counsel did not act inappropriately. When one of Plaintiffs' counsel objected to a question about the new algorithm, Defense counsel noted that he would question Mr. Fitzgibbon's about the algorithm at the end of the day and invited Plaintiffs' counsel to move for a protective order. Defense counsel's very next question, however, related to the new algorithm, the relevance of which the Court has addressed above. Despite repeated reminders from Plaintiffs' counsel that they were objecting to questions about the new algorithm and may seek a protective order, Defendant's counsel continued to question Mr. Fitzgibbons about the new algorithm. Accordingly, Defendant does not have standing to challenge the conduct of Plaintiffs' counsel at Mr. Fitzgibbon's deposition. Even if it did, moreover, the disputed conduct likely lasted for mere minutes and would not entitle Defendant to further depose Mr. Fitzgibbon.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Chamberlain's Motion for a protective order.

---

[1] Defendant did not assert in its Response that it would like to question Mr. Fitzgibbon regarding this letter.