# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 3449 | **DATE** | 9/10/2010 |
| **CASE TITLE** | Chamberlain Group, Inc vs. Lear Corp et al. | | |

**DOCKET ENTRY TEXT**

Defendant's motion for leave to amend its answer [565] is denied.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Defendant, Lear Corporation, has filed a motion ("Motion") seeking leave to amend its Answer to add additional grounds for its inequitable-conduct counterclaim against Plaintiffs, The Chamberlain Group, Inc. ("Chamberlain") and Johnson Controls Interiors LLC. For the following reasons, the Court denies the Motion.

### LEGAL STANDARD[1]

Defendant "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *see also Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007) (noting that courts should generally "use their discretion under Rule 15(a) to liberally grant permission to amend pleadings"). "Although leave to amend should be freely given, Fed. R. Civ. P. 15(a), that does not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009); *see also Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) (noting that despite the liberal nature of Rule 15(a), "leave to amend is not automatically granted"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 759 (7th Cir. 2002). Indeed, district courts "'have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the [non-moving party], or where the amendment would be futile.'" *Hukic*, 588 F.3d at 432 (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). "Delay on its own is usually not reason enough for a court to deny a motion to amend." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). The longer the delay, however, "'the greater the presumption against granting leave to amend.'" *Id.* (quoting *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994)). Ultimately, "'[t]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Id.* (quoting *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)); *see also Larkin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001).

|   | Courtroom Deputy | KF |
|---|---|---|

---

[1] Because seeking leave to amend a pleading is a procedural matter, Seventh Circuit law governs. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009).

# BACKGROUND

Plaintiff Chamberlain filed a Complaint on June 13, 2005, alleging that Lear was infringing U.S. Patent Nos. 6,154,544 ("'544 Patent") and 6,810,123 ("'123 Patent"). (R. 1, Compl.) Lear answered the Complaint on August 1, 2005, asserting, among other things, an invalidity affirmative defense and counterclaim. (R. 28, Answer at 7, 10-11.) On October 5, 2005, Plaintiffs filed an Amended Complaint, again alleging that Lear was infringing the '544 and '123 Patents. (R. 43, Am. Compl.) Defendant answered the Amended Complaint on October 24, 2005, again asserting an affirmative defense and counterclaim for invalidity. (R. 52, Answer to Am. Compl. at 5, 7-8.) On August 19, 2008, Plaintiffs filed their Second Amended Complaint, again alleging that Lear was infringing the '544 and '123 Patents and adding an allegation that Lear was infringing U.S. Patent No. 7,412,056 ("'056 Patent"). (R. 270, 2d Am. Compl.)

Defendant answered the Second Amended Counterclaim on September 8, 2008, raising affirmative defenses that the '544, '123, and '056 Patents were all unenforceable due to inequitable conduct. (R. 283, Affirmative Defenses 3-5.) Defendant also asserted a counterclaim alleging that the '544, '123, and '056 Patents were unenforceable

> because the inventors (Bradford Farris and James Fitzgibbon), the assignee (The Chamberlain Group, Inc.), the patent prosecution firm (Fitch, Even, Tabin & Flannery), and patent attorney Kenneth H. Samples . . . prosecuting the application resulting in the issuance of the '544, '123, and '056 patents intentionally did not disclose material prior art . . . which they knew was material to the examiners' determination of the patentability of the claims of the '544, '123, and '056 patents, for the purpose of deceiving the Patent Office into issuing the patents.

(R. 283, Answer to 2d Am. Compl. at ¶ 26.) This alleged inequitable conduct was based in part on "the non-disclosure of the Miyake reference in the proceedings of the '544, '123 and '056 patents." (*Id.* at ¶ 38.)

Defendant deposed Mr. Fitzgibbon on May 25, 2010, Mr. Farris on May 27, 2010, and Mr. Samples on June 15, 2010. (R. 567, Mem. in Supp. of Mot. at 5.) During Mr. Fitzgibbon's deposition, he testified among other things that (1) contrary to a 2003 declaration, he did not know or conceive of encrypting a fixed code in response to the rolling and fixed code until after another reference's ("Issa reference") date; and (2) Chamberlain had been involved in three lawsuits – two with Skylink Technologies, Inc., one with MicroChip Technology Inc., all involving the patents-in-suit – none of which Chamberlain brought to the examiners' attention. (*Id.* at 7-9.) During his deposition, Mr. Farris testified in relevant part that, contrary to a 2003 declaration, he did not know or conceive of encrypting a fixed code in response to the rolling and fixed code until after the Issa date. (*Id.* at 7.) Mr. Samples' deposition testimony included that he knew of a Miyake and Nakahara references during the prosecution of all three patents-in-suit, but he did not disclose them because he believed it was cumulative. (*Id.* at 5-6.)

During a motion hearing which all parties attended on June 14, 2010, the Court again extended the discovery deadline from June 18, 2010, to June 30, 2010, at the parties' joint request. (R. 510, 6/14/10 Minute Order.) The parties also attended status hearings before the assigned magistrate judge on June 22, 2010, and July 1, 2010. (R. 536, 6/22/10 Minute Order; R. 549, 7/1/10 Minute Order.) Defendant filed its Motion on July 9, 2010, after the close of discovery and six days before the exchange of opening expert reports. (R. 565, Mot.; R. 510, 6/14/10 Minute Order.)

## ANALYSIS

Defendant Lear contends that "sufficient facts to substantiate [its] pleading were not available until [July]" (R. 567, Mem. in Supp. of Mot. at 10), and that its proposed amendments are not futile (*id.* at 12). In response, Plaintiffs argue that Defendant's proposed amendments would be futile (R. 600, Resp. Br. at 10) and unduly prejudicial to them (*id.* at 15).

The Court denies Defendant's Motion because Defendant failed to promptly seek leave to amend, and allowing the proposed amendments would prejudice Plaintiffs. As an initial matter, Defendant's argument that it only recently learned of additional grounds for its inequitable-conduct counterclaim rings hollow. Defendant first raised the issue of inequitable conduct when it filed its initial answer over five years ago. (R. 28, Answer at 7, 10-11.) Additionally, when it answered the Second Amended Counterclaim in 2008, it specifically alleged that the '544, '123, and '056 Patents were unenforceable due to inequitable conduct in the form of non-disclosure of the Miyake reference. (R. 283, Answer to 2d Am. Compl. at ¶ 38.) In doing so, it faulted – by name – Messrs. Farris, Fitzgibbon, and Samples for failing to disclose information to the PTO. (*Id.* at ¶ 26.) Defendant, therefore, had every opportunity to explore, develop, and amend its inequitable conduct counterclaim during a lengthy, contentious discovery period. Indeed, it was aware of the specific people to question regarding Chamberlain's potential inequitable conduct, and it knew of at least one potential basis for its inequitable conduct counterclaim.

Further, Defendant does not dispute that it has long had access to prosecution history referencing Nakahara, the purportedly-false declaration, and the Microchip litigation. (*See* R. 605 Reply Br. at 14.) Defendant also questioned a Chamberlain witness regarding the Skylink litigation in 2006, and by April 30, 2010, it had a copy of the settlement agreement for the Skylink litigation. (*Id.*) Much of the information that Defendant purportedly learned of during the Fitzgibbon, Farris, and Samples depositions was also publicly-available. *See Hukic*, 588 F.3d at 432 (upholding denial of leave to amend complaint where the information on which the proposed amendments were based was publicly "available long before he sought leave to amend").

Denial is also appropriate because allowing Defendant to amend its pleading at this late stage would cause undue prejudice to Plaintiffs. "A trial court may deny leave to amend when the amendment would cause the opposing party to bear additional discovery costs litigating a new issue and the moving party does not offer to reimburse the nonmoving party for its expenses." *Campania Mgmt.*, 290 F.3d at 849. Defendant has not offered to reimburse Plaintiffs for the costs associated with its amended answer. Furthermore, were Defendant allowed to amend its pleading, expert reports – which have already been exchanged – would have to be redone in light of the new allegations. This task would require a significant amount of time and resources. *See Cruz v. Safford*, 579 F.3d 840, 844 (7th Cir. 2009) (noting that "'eleventh hour additions are bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants.'" (quoting *Soltys*, 520 F.3d at 743)). Under such circumstances, Lear should not be able to amend its answer. *See Hukic*, 588 F.3d at 432 (denying leave to amend complaint where the plaintiff waited until three days before the close of fact discovery to make the request); *Campania Mgmt.*, 290 F.3d at 850 (upholding the district court's denial of a motion for leave to amend filed six days prior to the discovery deadline that would have raised additional, complex issues); *In re Ameritech Corp.*, 188 F.R.D. 280, 284-85 (N.D. Ill. 1999).

Defendant has not explained why it waited so long to seek leave to file an amended answer. Between May 25, 2010, the day that Lear deposed Mr. Fitzgibbon, and July 9, 2010, the day that Defendant filed its Motion, eighty entries were added to the docket, and the parties appeared before the Court or the assigned magistrate judge three times. Lear waited to file its Motion, however, until the eve of exchanging opening expert reports and after the close of discovery.

It is time for this case to proceed beyond the pleadings and discovery stages. This case was filed in 2005 and transferred to this Court in April 2009.[2] The case has been contentious and heavily litigated by the parties, as evidenced by the fact that the parties have filed roughly two dozen discovery-related motions. The parties have had extensive discovery disputes, including disagreements over deadlines (*see* R. 384, 12/8/09 Minute Order), third-party discovery (*see* R. 391, 1/4/10 Minute Order; R. 478, 5/19/10 Minute Order; R. 570, 7/12/10 Minute Order), continued depositions (*see* R. 477, 5/14/10 Minute Order; R. 588, 7/15/10 Minute Order), additional discovery (*see* R. 476, 5/14/10 Minute Order; R. 621, 8/9/10 Minute Order), sur-reply briefs (*see* R. 587, 7/15/10 Minute Order), and the scope of discovery (*see* R. 582, 7/13/10 Minute Order). Indeed, over a year ago Defendant asked the Court to prevent the "never ending scorched earth discovery by Plaintiffs in this case." (R. 331, Def.'s Mot. for Protective Order at 1.)

In short, the parties have proven their awareness of how to bring issues to the Court's attention. Because Defendant delayed in bringing its Motion and would prejudice Plaintiffs by filing an amended answer at this late stage of the litigation, the Court denies its request to grant leave.[3] *See Pressure Prods.*, 599 F.3d at 1321 (upholding denial of motion for leave to amend to assert a defense of inequitable conduct).

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion for leave to file an amended answer.

---

[2] The case was stayed from July 2009 through November 2009 after Lear Corporation filed for bankruptcy. (*See* R. 359, 7/9/09 Minute Order; R. 366, 11/19/09 Minute Order.)

[3] The Court does not address whether the proposed amendments would be futile because Defendant's undue delay in seeking leave and Plaintiffs' resulting prejudice provides an independent basis for denying the Motion.