UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

---

THE CHAMBERLAIN GROUP, INC., and )
JOHNSON CONTROLS INTERIORS, L.L.C., ) No. 05 CV 3449
    *Plaintiffs*, )
  v. ) Circuit Judge
     ) Richard A. Posner,
LEAR CORPORATION, ) sitting by designation
    *Defendant.* )

---

## Order

    The proposed jury instructions (both preliminary and final) submitted by the parties are unrealistic about the capacity of a lay jury to understand a patent case involving a mathematical algorithm. They are prolix, esoteric, needlessly technical, and jargon-ridden. I have drastically simplified them and they are attached to this order.

    Your objections to these instructions, together with any proposals for additional instructions, must be submitted to me by the close of business on Friday, March 25. I will conduct an instructions conference on the record at 10 a.m. on March 28. My rulings on the instructions, based on your submissions and the hearing, will be final, except that I will conduct another, but brief, instructions conference at the end of the trial (before closing arguments), also on the record, and at that conference you may propose changes in the instructions, but only if the changes are justified by unforeseen testimony or other unanticipated developments at the trial.

    Regarding the question of what standard of proof is applicable to Lear's invalidity defense in light of the Supreme Court's grant of certiorari in *Microsoft v. i4i*, No. 10–290 (scheduled for argument on April 18), I will instruct the jury on the basis of the current law (Lear must prove invalidity by clear and convincing evidence). Should the jury find obviousness under that standard, there will be no need for reconsideration regardless of what the Supreme Court does in the *Microsoft* case. If the jury does not find invalidity and does find infringement, we move on to phase two (inequitable conduct)

and then to phase three (damages). If a reasonable jury could have found invalidity on the basis of a lower standard of proof than clear and convincing evidence, I would delay entry of a final judgment until the Supreme Court decides the *Microsoft* case (probably in late June, and consider at that time what if any further proceedings are necessary in light of its opinion.

*Richard A. Posner*

Circuit Judge
March 17, 2011

Attachment

March 10, 2011

# INTRODUCTORY INSTRUCTIONS

1.1

This is a case involving two patents, called '544 and '123. They are patents on technology for preventing other people from opening your garage door—in other words, a technology, which happens to be mathematical in character, for encryption. It is like a password, but more complicated. It will be explained at the trial.

I'm going to give you some preliminary instructions to help orient you to the case. I'll give you more detailed instructions later, when the trial is over and you are about to consider what your verdict will be.

Patents are issued by the U.S. Patent and Trademark Office, a federal agency. They are intended to encourage innovation by giving an inventor the exclusive right to make, use, and sell his patented invention for a period of years. If someone violates that exclusive right—in other words, infringes the patent—the owner of the patent can sue the alleged violator (the infringer) in a federal district court. Even if the defendant did infringe the patent, the patent owner will lose the case if the defendant proves that the patent was invalid, that is, that the Patent and Trademark Office made a mistake in issuing it. Both infringement and validity are issues in this lawsuit, as I'll explain.

The parties to the lawsuit are Chamberlain, Johnson Controls (which the parties call "JCI"), and Lear Corporation. Chamberlain and JCI are the plaintiffs and Lear is the defendant. Chamberlain owns the patents and JCI has an exclusive license (right) to make products based on them. (For most purposes, you won't have to distinguish between Chamberlain and JCI; you can just think of them as the plaintiffs.) Chamberlain and JCI contend that Lear has infringed the patents by making, selling, using, etc., the inventions covered by the patents without the plaintiffs' permission. A patent, if valid, gives the patent owner and his licensees the right to prevent others from making, selling, using, etc. the patented invention without permission.

1.2

The invention protected by a patent is described in the section of the patent labeled "patent claims," which are set forth in separately numbered paragraphs at the end of the patent. When a product (in this case the defendant's product) is accused of infringing a patent, the patent claims must be compared to the product.

To be entitled to patent protection, an invention must be new, useful, and nonobvious. A patent is not new if the invention was already known, or, in patent lingo, was part of the "prior art." I will give you further instructions about what counts as prior art at the end of the case.

1.3

The jury's job is to determine the facts relating to the legal issues. I will tell you what the law is and you'll apply the law to the facts to determine which side wins. Nothing I say during the trial is intended to indicate what I think the facts are or your verdict should be.

1.4

For the plaintiffs to prove infringement of the two patents at issue in this case, they must persuade you that their position is more likely true than false. You don't have to be certain, in order to find infringement, but you have to be convinced that they have a stronger case than the defendant. Concretely, the plaintiffs must prove that every element in each claim contained in the patents is found in the defendant's product, whether as an exact duplicate of the element or as being equivalent to it in the sense that a person of ordinary skill in the relevant technology would have considered the differences between them to be insubstantial. Any difference is insubstantial if a product covered by the patented claims, and the defendant's product, perform substantially the same function and work in substantially the same way to achieve substantially the same result.

1.5

The plaintiffs contend not only that the defendant infringed their two patents, but that it did so willfully. To prove this, they must prove by "clear and convincing evidence" that it was highly likely that the defendant's product infringed and that the defendant either knew that it was highly likely or should have known.

"Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. You must decide whether there was simple infringement, under the lower standard of proof that I mentioned earlier, and if you find there was, you should go on to decide whether the infringement was willful.

1.6

The defendant contends that all of the claims that the plaintiffs contend are infringed are invalid. Patents are issued by the U.S. Patent and Trademark Office, so the law presumes they're valid. But a court can invalidate a patent or a particular claim in a patent. To prevail on its claim of invalidity, the defendant must prove invalidity by clear and convincing evidence.

1.7

A patent claim is invalid if the invention claimed is obvious. An invention is obvious if a person who had ordinary (though not necessarily extraordinary) skill in the

technology relevant to the invention and who knew all the prior art existing at the time of the invention would have come up with the invention at that time.

1.8

The evidence you'll be hearing or reading consists of testimony of witnesses, documents admitted into evidence as exhibits, and any facts that the lawyers agree to or that I may instruct you to accept as being true. The exhibits are in binders, one for each side, which you will be given momentarily.

The parties may present the testimony of a witness by reading from a deposition transcript or by playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had appeared in court.

Certain things are not evidence and must not be considered by you:

Statements, arguments and questions by lawyers.

Objections to questions or exhibits. Lawyers are entitled to object when evidence being offered is inadmissible. If the objection is sustained, ignore the question or exhibit. If the objection is overruled, treat the answer or exhibit like any other.

Testimony that I have excluded or told you to disregard.

Anything you may see or hear outside the courtroom. You're to decide the case solely on the basis of the evidence presented in the courtroom.

Certain exhibits that are called "demonstrative exhibits," such as models, diagrams, graphs, and sketches, may be shown to you but they are not themselves evidence; they're just to help you understand the case better.

In deciding whether any fact has been proved, you should consider all the evidence relating to the question regardless of which side introduced it. You should also decide how much of a witness's testimony to accept or reject.

1.9

A few words about your conduct as jurors.

You are not to discuss the case among yourselves until at the end of the case you go to the jury room to deliberate and to decide on your verdict.

You're not to talk to anyone (including members of your family, and friends) or make any public or online comments about this case until the trial has ended and you have been discharged as jurors.

You're not to read or listen to anything bearing on this case in any way, including news stories, radio or television reports, or the internet. You're not to do any research online or conduct any other type of investigation of the case, the lawyers, the witnesses, or the companies that are the parties. If anyone tries to talk to you about the case, bring that to my attention promptly.

Don't form an opinion until all the evidence is in.

You've been given pads on which to make notes if you want, but leave the pads in the jury room at the end of each day, until you begin your deliberations with the other jurors, and don't be unduly influenced by the notes of other jurors, because they may not be accurate.

If you want to ask a question of a witness, raise your hand and I'll ask you to ask me the question first, so that I can make sure that it's in a form that's proper for the witness to answer.

1.10

The trial will now begin. Each side will make an opening statement. That is not evidence, but just a sketch of what the party intends to prove. Next each side will questions its witnesses, and the lawyers for the other side will cross-examine them, to try to bring out errors in their testimony. After all the witnesses have testified, the lawyers will present closing arguments. I will then give you final instructions, setting forth the law in somewhat greater detail than in these preliminary instructions, and you'll then go to the jury room with a copy of the instructions, your notes, and your evidence binders, to deliberate on your verdict.

# FINAL INSTRUCTIONS

2.1

    Members of the jury, you've seen and heard all the evidence and arguments of the lawyers. Now it's your turn. You'll decide, on the basis of the evidence you've heard and read, what the facts are that relate to how the case should be decided, and you'll apply the law that I explain to you in these instructions to the facts. You must follow my legal instructions even if you disagree with them, because they state the law, and you must apply the law, just like a judge.

    Perform these duties fairly and impartially.

    Nothing I say now, and nothing I said during the trial, are meant to indicate what I think the facts are or your verdict should be.

2.2

    The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations, which are agreements between both sides that certain facts are true. You should give the same consideration to testimony presented to you by video or by reading from deposition transcripts as you would if the witnesses had come to court and testified live.

2.3

    These things are not evidence:
Testimony or exhibits that I ordered stricken.
Anything you saw or heard outside this courtroom.
Questions to witnesses, and objections to questions by lawyers.
The lawyers' opening statements and closing arguments
Any notes you took during the trial; they are just to help you remember things.

2.4

    In determining whether any fact has been proved, you should consider all of the evidence relating to the question regardless of which side introduced it.

2.5

    You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all, and how much weight, if any, to give the testimony in resolving a factual issue. You shouldn't just count noses: the fact that one side presents more witnesses, testimony, or other evidence on an issue than the other side doesn't mean that the first side is right.

2.6

You have heard some opinions from witnesses who are called "expert witnesses" because they have specialized knowledge. You should weigh this testimony in the same way that you weigh the testimony of any other witness. You are not required to accept an expert's opinion, but you must give an expert's testimony the weight you think it deserves, considering the reasons the witness gave for the opinion, the witness's qualifications, and the other evidence, including other expert evidence, in the case.

2.7

The issues you have to decide are (1) whether the plaintiffs have proved by a preponderance of the evidence that Lear infringed claims 1, 2, and 4 of the '544 patent and claim 1 of the '123 patent and (2) whether Lear has proved by clear and convincing evidence that claims 1, 2, and 4 of the '544 patent and claim 1 of the '123 patent are obvious and therefore invalid.

A few terms in the patents don't have their everyday meaning, but instead a special meaning, as follows: "binary code" and "binary signal" both mean a binary number; "trinary code" and "trinary signal" both mean a trinary number. Remember that binary numbers are quantities represented in the base-2 system, and trinary numbers are quantities represented in the base-3 system. You heard about these systems, and their relevance to the case, when you saw the video tutorial and heard testimony, during the trial, but I want to give you a brief refresher course, with examples that you can go over in your deliberations.

A binary number is a number in base 2; a trinary number in base 3. A base is just a number used as a building block for expressing numerical quantities. Most of our counting is in base 10. Base 10 denotes the base number 10. A number can be expressed as a sum of base numbers. Here is how to express 1254 as a sum of numbers based on 10:

$1000 = 1 \times 10^3$ (a cube)
$\phantom{0}200 = 2 \times 10^2$ (a square)
$\phantom{00}50 = 5 \times 10^1$ (just plain 10)
$\phantom{000}4 = 4 \times 10^0$ (any number to the power of 0 equals 1)

―――

Hence **1254**

Other bases can be used to express the quantity 1254. This results in the same quantity being expressed by a different series of numbers.

So for base 2:

$1024 = 1 \times 2^{10}$
$0 = 0 \times 2^9$
$0 = 0 \times 2^8$
$128 = 1 \times 2^7$
$64 = 1 \times 2^6$
$32 = 1 \times 2^5$
$0 = 0 \times 2^4$
$0 = 0 \times 2^3$
$4 = 1 \times 2^2$
$2 = 1 \times 2^1$
$0 = 0 \times 2^0$
———

$1254 = 10011100110$

And now for base 3:

$729 = 1 \times 3^6$
$486 = 2 \times 3^5$
$0 = 0 \times 3^4$
$27 = 1 \times 3^3$
$9 = 1 \times 3^2$
$3 = 1 \times 3^1$
$0 = 0 \times 3^0$
———

$1254 = 1201110$

Notice therefore that these are three different ways—three different sets of numbers—for expressing the *identical* quantity, and you must know what base system is being used in order to know what quantity is being expressed.

| Base 10 | Base 2 | Base3 |
|---|---|---|
| 1254 | 10011100110 | 1201110 |

The reason that encryption devices for the garage-door openers use base-2 or base-3 systems rather than the more familiar, everyday base-10 is that base 2 uses only two digits (numbers)—0 and 1—and base 3 uses only three digits—0, 1, and 2—whereas

the base-10 system uses nine digits (0, 1, 2, 3, 4, 5, 6, 7, 8, 9). It is easier for the transmitter in the garage-door opener to signal the receiver in the garage door with just two or three separate digits than with nine; for example, with only two digits, the transmitter could transmit a series of long (1) and short (2) electrical signals, much as in Morse Code.

2.8

A product infringes a patent if every element in a claim is found in Lear's product. The claims in dispute are claims 1, 2, and 4 of the '544 patent and claim 1 of the '123 patent.

To find infringement of claim 1 of the '544 patent, you must find that Lear's product contains: a "binary code generator responsive to the enabling apparatus for generating a variable binary code, said variable code being different for each enabling by the enabling device," and also a "trinary code generator for generating a three-valued or trinary code responsive to the variable binary code."

Claims 2 and 4 of the '544 patent:

Lear's product can't infringe claims 2 and 4 in the '544 patent if it doesn't infringe claim 1. If, therefore, you find that Lear's product does not infringe claim 1, you shouldn't consider claims 2 and 4.

To find infringement of claim 2 of the '544 patent, you must find that Lear's product infringes claim 1 and also that it contains: an "apparatus for receiving said variable binary signal and producing a mirrored binary signal, said mirrored binary signal being supplied to said trinary code generator for generating the trinary signal from the variable binary signal."

To find infringement of claim 4 of the '544 patent, you must find that Lear's product infringes claim 1 and that it also contains "a trinary interleaved fixed and rolling code signal."

Claim 1 of the '123 patent:

To find infringement of claim 1 of the '123 patent, you must find that Lear's product contains "a source of a sequence of binary codes, successive binary codes in the sequence being different from predetermined preceding codes in the sequence" and also a "trinary code generator for converting said sequence of binary codes to a sequence of trinary codes."

2.9

You don't have to be absolutely certain in order to find infringement, but you have to be convinced that the plaintiffs have a stronger case for infringement than Lear has for noninfringement. The plaintiffs must prove that every element in the claim that

you are considering is found in Lear's product. This can be proved in either of two ways. An element of a claim is found in Lear's product if the element in its product is exactly the same as it is in the claim in the plaintiffs' patent, or alternatively if the element in Lear's product is equivalent to is an element in the claim.

So what exactly is "equivalence"? An element in the product that is alleged to infringe the plaintiffs' patent is equivalent to an element in the patent if the differences between the two would be thought insubstantial by a person of "ordinary skill" in the field of knowledge relating to the invention. (A person of "ordinary skill" in the technological field to which the patented invention belongs just means a person who has the education and experience necessary for a competent understanding of the technology described in the patent; he doesn't have to be a genius.)To determine whether the differences are insubstantial or substantial, you should consider whether the element in question performs substantially the same function, in substantially the same way, to achieve substantially the same result, as an element of the claim. If so, the elements are equivalent.

2.10

The plaintiffs contend not only that Lear infringed their two patents, but that it did so willfully. You are to consider willful infringement only if you have found that Lear infringed. To prove willful infringement, the plaintiffs must prove by clear and convincing evidence that Lear realized, or should have realized, that there was a high likelihood that it was infringing a valid patent.

"Clear and convincing" evidence is evidence that makes it highly probable that the particular proposition is true. You must decide whether there was simple infringement, under the lower standard of proof that I mentioned earlier ("preponderance of the evidence"—that is, more likely than not, even if just a little more likely than not), and if you find there was, you should go on to decide whether the infringement was willful.

2.11

Even if you find that there was infringement, that isn't the end of the case. Lear contends that claims 1, 2, and 4 of the '544 patent and claim 1 of the '123 patent are invalid because they were obvious before the patents were issued. If Lear proves this contention, it wins the case even if it infringed the plaintiffs' patents. But to prove obviousness and hence invalidity, Lear must prove by clear and convincing evidence that a person of ordinary skill (etc.—see definition in section 2.08 above) and who knew all the "prior art" existing when the invention was made, would have invented the patented product at that time. "Prior art" means all the information that is publicly known, used by others, or available on the date of the invention to a person of ordinary skill. For example, other patents, inventions, products, articles, books, and scientific literature are

all prior art. You must put yourself in the position of such a knowledgeable person at the time of the claimed invention. The question is what would he have known. You must not use hindsight; that is, you must not consider what is known now, including what could be learned from the plaintiffs' patents.

In making your decision regarding obviousness, you should consider the scope and content of the prior art and also any differences between the prior art and the invention in the patent claim.

The following circumstances, which you should also consider in deciding whether the plaintiff's invention was obvious, may indicate that the invention was not obvious:

The invention achieved commercial success, as long as that success resulted from the invention rather than from something else, such as how the invention was marketed.

It satisfied a long-felt need.

Other inventors failed in attempting to make it, copied it, praised it, or sought or obtained rights to the patent from the patent holder.

Experts expressed surprise at the making of the invention.

The inventor refused to be discouraged by the fact that he was thinking outside the box.

Not all of these factors need be present, and no factor is more or less important than the others. And because most inventions are built on prior knowledge, the fact that each of the elements of the claim may be found in prior art is not enough, by itself, to prove obviousness. Moreover, in determining whether Lear has proved obviousness, you may combine multiple items of prior art. (If milk has been invented, and chocolate has been invented, so that both milk and chocolate are prior art, then combining them to make chocolate milk would be obvious.)

The parties agree that the following sources are prior art:

**[list the uncontested prior art]**

The parties disagree about whether the other sources that were mentioned at the trial are prior art.

A disputed source is not prior art unless Lear proves that it was (1) known or used by someone else in the United States before the date of the plaintiffs' invention, May 17, 1995, unless the knowledge or use was private or secret; (2) patented, or described in a printed publication in the United States or a foreign country, before that date; or (3) in public use or on sale in the United States at least one year before that date.

**[are the dates disputed? If not, the reference to dates should be deleted]**

2.12

When you go to the jury room for your deliberations, first select a presiding juror to be the foreperson. He or she will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you. Take them to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

2.13

The verdict must represent the considered judgment of each juror and must be unanimous, whether the verdict is in favor of the plaintiffs or the defendant, or for the plaintiffs on some issues and the defendant on others. You should make every reasonable effort to reach a unanimous verdict and in doing so you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views, and to change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

2.14

If it becomes necessary during your deliberations to communicate with me, you may send a note by a court security officer, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any other means. If you have trouble reaching a unanimous verdict, you're not to tell me or anyone else which side is favored by more jurors.