UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

———————

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., and<br>JOHNSON CONTROLS INTERIORS, L.L.C.,<br>　　　*Plaintiffs,*<br>　v.<br><br>LEAR CORPORATION,<br>　　　*Defendant.* | )<br>) No. 05 CV 3449<br>)<br>) Circuit Judge<br>) Richard A. Posner,<br>) by designation<br>) |

———————

## ORDER ON MOTIONS IN LIMINE

The motions in limine were done incorrectly. Instead of a motion followed by a statement in support of it, the motion and the statement are mixed together, with the result that it is unclear what exactly the movant wants included or excluded; in plaintiffs' motion 1 for example, the substance of the motion is not stated until the conclusion of the argument section.

The numbers in bracket before each of the motions below are the numbers by which the motions will be identified at the trial. Any party wishing to object on the basis that a question to a witness violates one of the motions in limine should object by saying: "Objection: Motion __." No further oral statement of an objection in the hearing of the jury is permitted, but counsel for either side can request a sidebar if necessary.

In this order, the quotation in parentheses after the number of the motion is the motion part of the motion, as distinct from the supporting statement. In some cases I have edited the language in the motion to make it clearer and more precise.

**[1]** *Lear's Motion 1* (to exclude any testimony or documents concerning pre-production versions of Lear's product, including the testimony of Jason Bauman and Kurt Dykema and Plaintiffs' Exhibits 35, 49–52, 54–55, 105, and 129): Partially granted and partially denied. I again remind the parties to avoid tendentious bickering. Chamberlain's response is ridiculously argumentative, as in: "At bottom, Lear's motion is just another attempt to hide its willfulness and tip the case in its favor. Whereas Plaintiffs have been working with this Court in good faith to narrow the case in a fair and balanced way, Lear uses the concept of 'narrowing' as a sword and a shield. Just as Lear improperly invoked the attorney client privilege during discovery to hide its willfulness, Lear now latches onto the Court's desire to narrow this case to try to further hide its willfulness (while insisting all along that it should be allowed to use any helpful evidence it produced to show it acted carefully). Lear's actions are akin to a robber trying to hide years of evidence showing how he planned a robbery under the veiled argument that it is better for the jury to only hear about what happened the day the house was robbed, while at the same time introducing self-serving and irrelevant evidence from the prior period." There must be no more of this childish abuse ("akin to a robber," etc.). Lear is at fault too but the plaintiffs are even worse offenders. No more or there will be sanctions. In more than 29 years as a judge, I have never encountered such bickering, quarrelsome lawyers. You are wasting my time and your clients' money.

The motion is actually a series of motions. Lear's motion to exclude Dykema's testimony is granted for the reasons given in [2] below. Plaintiffs' Exhibit 129 is the source code for the production version of Lear's product. This exhibit is admissible. The other evidence sought to

be excluded is relevant to the claim of willful infringement: Plaintiffs' Exhibits 35 and 105 are admissible to show Lear's awareness of Chamberlain's patented product and code; Plaintiffs' Exhibits 49–52, 54, and 55 are evidence that Lear was demonstrating a product for sale before it invented its alleged noninfringing encryption device.

I will however instruct the jury that the only product alleged to infringe is the production version and that evidence of pre-production versions is relevant only to willfulness.

**[2]** *Lear's Motion 2* (to preclude any testimony by Dykema or any documents produced by TwisThink, including Plaintiffs' Exhibits 36, 38, 40, 53, 84, 84, and 87): Granted. This motion is really a continuation of motion 1. The plaintiffs' focus on Dykema's testimony about secrecy and "code names" would be more relevant were this a trade secrets case, rather than a patent case. Essentially the plaintiffs are trying to make the jury think that attempts to invent around are bad conduct, which it is not, so the plaintiffs may not present any testimony from Dykema or any documents produced by TwisThink, including Plaintiffs' Exhibits 36, 38, 40, 53, 84, 84, and 87.

**[3]** *Lear's Motion 4* (to preclude the plaintiffs from arguing that the ability of Lear's product to operate Chamberlain garage door openers means that Lear's product infringes): Granted. The plaintiffs' response is not only ridiculously argumentative; it is incomprehensible. Plaintiffs may not argue that Chamberlain garage door openers cannot be operated without infringing the patents.

I will add the following language to the preliminary instructions: "Lear has created a product that is capable of operating the plaintiffs' garage-door openers. That is not improper so long as Lear's product doesn't infringe the plaintiff's patents."

**[4]** *Lear's Motion 5* (to preclude the plaintiffs from arguing that Lear "copied" the commercial HomeLink product): Conditionally granted. Copying can be relevant to obviousness (if an invention is obvious, there is no need to copy it). But the plaintiffs seem to want to use copying in the form of reverse engineering to indicate willfulness or other bad conduct, which is not proper; there is nothing wrong with reverse engineering. The plaintiffs may not argue that Lear copied the commercial HomeLink product or any of Chamberlain's commercial products; but if Lear tries to prove obviousness by presenting evidence that it had no interest in copying the plaintiffs' invention and did not do so, the plaintiffs may rebut with evidence that Lear thought it needed to copy (reverse engineer) the plaintiffs' invention in order to invent around it.

**[5]** *Lear's Motion 7 and the plaintiffs' cross-motion in response* (to preclude argument equating powers of two to binary numbers): Lear's motion is granted in part and denied in part. The plaintiffs' cross-motion is denied.. A binary number is a number in base 2, and the digits making up a binary number are powers of 2.

No party may refer to the value of a power of two as a binary number, but may refer to the powers of two as being the components of a binary number. The parties may refer to the values in Lear's table as including trinary coded values of powers of two or as including trinary numbers expressing the powers of two.

**[6]** *Lear's Motion 8* (to allow Lear to refer to the Kraft patent at trial): Granted in part. If Lear presents evidence that it practices the Kraft patent, the patent is admissible to contest infringement by equivalents. The PTO's decision to grant a patent is relevant, although not conclusive, evidence that the patented invention is not the equivalent of a previously patented invention.

Lear may not suggest that the Kraft patent entitles it to practice that patent. A patent confers the right to exclude others from practicing it, not an affirmative right to practice it.

Nor may it present the Kraft patent as evidence against willful infringement. The patent application was not filed until years after Lear began selling the allegedly infringing product and almost a year after the plaintiffs sued. No reasonable jury could find that Lear was relying on the Kraft patent when it began marketing the allegedly infringing product and thus was not acting willfully.

**[7]** *Lear's Motion 9, Regarding the Plaintiffs' Exhibits*:

**[7.1]** Plaintiffs' Exhibit 35: Denied per [1] but subject to the limitation in [3].

**[7.2]** Plaintiffs' Exhibits 36, 38: Granted per [2].

**[7.3]** Plaintiffs' Exhibit 40: Granted per [2].

**[7.4]** Plaintiffs' Exhibit 45: Denied. Lear wants to bar an email between its engineers in which one says that inventing around the Chamberlain patents may not be mathematically solvable. This is relevant to whether Lear was able to invent around the plaintiff's invention. Lear objects that the plaintiffs want to include redacted pages in their production. Significant redaction is not permitted.

**[7.5]** Plaintiffs' Exhibit 47: Granted. Lear wants to bar a PowerPoint by JCI on their Homelink system. Self-serving, prejudicial.

**[7.6]** Plaintiffs' Exhibit 48: Granted. This is evidence of *Lear*'s commercial success, which is not an issue.

**[7.7]** Plaintiffs' Exhibits 49–52: Denied per [1], but subject to the limitation in [3].

6

**[7.8]** Plaintiffs' Exhibit 53: Granted per [2].

**[7.9]** Plaintiffs' Exhibits 54–55: Denied per [1].

**[7.10]** Plaintiffs' Exhibit 66: Denied.

**[7.11]** Plaintiffs' Exhibit 70: Granted Lear objects to a document that includes Kathi Lutton's handwritten notes. Jury would be confused to see a lawyer's notes as evidence.

**[7.12]** Plaintiffs' Exhibit 71: Denied. This is an email from Taeus to Lear, stating "here is the assembly file for the JC universal remote" and attaching a file. Lear objects that the plaintiffs haven't authenticated the document by deposing a Taeus representative, though this is the first time they've made such an argument. The email fits the hearsay exception for regularly conducted business activity, and the foundation adequately laid in Kraft's deposition.

**[7.13]** Plaintiffs' Exhibits 83–84: Granted per [2].

**[7.14]** Plaintiffs' Exhibits 85–86: Denied. Lear wants to exclude evidence that it licensed certain technologies from third parties. This evidence is relevant to willfulness insofar as it shows that Lear knows how to obtain a license to incorporate other companies' technology into its product when needed, and that it did not obtain a license to incorporate Chamberlain's technology. v

**[7.15]** Plaintiffs' Exhibit 87: Granted per [2].

**[7.16]** Plaintiffs' Exhibit *88*: Granted. Without a lot of background evidence, the significance of such an indemnification could not be assessed by the jury.

**[7.17]** Plaintiffs' Exhibit 105: Denied per [1].

**[7.18]** Plaintiffs' Exhibits 121–28: Granted Hearsay and meaningless puffery.

**[7.19]** Plaintiffs' Exhibits 131–38: Granted. No show and tell beyond the video and the other test results.

**[7.20]** Plaintiffs' Exhibits 139–40, 160–65: Denied. These are not hearsay if there is a witness to lay the proper foundation. Dr. Rhyne can lay the foundation for the tests he personally conducted, and per Lear's request to trim the number of testifying experts, Dr. Rhyne can lay the foundation for the tests conducted by the other plaintiffs' experts. Lear can't object; they were the ones who objected to allowing testimony from the other scientists.

**[7.21]** Plaintiffs' Exhibits 170–76: Granted. Software files in machine language would be incomprehensible to jurors (or the judge and the lawyers, for that matter).

**[7.22]** Plaintiffs' Exhibits 181–82: Denied. Admissible under FRE 703 to back up McGavock's testimony about commercial success.

**[7.23]** Plaintiffs' Exhibits 185–87: Granted. Prejudicial.

**[7.24]** Plaintiffs' Exhibits 188–90: Denied per [7.20]. Lear objects to the methodology used by plaintiffs' expert, which is fodder for cross-examination not exclusion of evidence.

**[7.25]** Plaintiffs' Exhibit 197: Denied.

**[7.26]** Plaintiffs' Exhibit 211: Denied per [5] subject to the limitation in [3].

**[7.27]** Plaintiffs' Exhibits 218–23: Granted. Peripheral and distracting.

**[7.28]** Plaintiffs' Exhibits 225–27: Granted. The plaintiffs' objection is nonresponsive.

**[8]** *Plaintiffs' Motion 1* (to exclude the Kraft patent and any other non-asserted patent not being presented as prior art): Granted in part and denied in part. This is the mirror image of Lear's motion 8 at [6].

**[9]** *Plaintiffs' Motion 2* (to exclude (1) any testimony or evidence that Lear designed around the patents in suit, that its efforts were intended to avoid the patents in suit, or that its efforts gave Lear a good faith belief that its design did not infringe; (2) any testimony or evidence relating to third-party opinions of infringement or noninfringement, including Ford and Ford's counsel's belief that Lear infringed; (3) any testimony by Ray Scott or any corporate representative or witness that Lear was not willful because it believed it did not infringe): Granted in part. The plaintiffs argue that Lear has used attorney-client privilege as both a sword and a shield. But if they believed that Lear was inappropriately asserting privilege they should have filed a motion to compel long ago.

**[9.1]** I deny part (1) of the motion; Lear will be allowed to introduce evidence that they tried to design around the patent, though some of their evidence will be excluded. Lear may not introduce Defendant's Exhibit 28. This internal Chamberlain email is irrelevant to Lear's state of mind, and minimally probative of whether there was an "objectively high risk of infringement," as Lear puts it. Additionally, the discussion of prior litigation creates a serious risk of prejudice. Defendant's Exhibit 18 is also excluded. Lear's PowerPoint presentation makes repeated and misleading references to earlier phases of this litigation. And as explained below at [12], Lear will not be allowed to argue that it depended on the Federal Circuit opinion when it makes willfulness arguments.

But Lear may introduce Defendant's Exhibits 7–11 and 34. These emails are admitted as "records of regularly conducted [business] activity." FRE 803(6).

**[9.2]** I grant part (2) of the motion. Defendant's Exhibit 41, a letter from Ford to JCI, will be excluded. Ford's tough negotiating position with JCI is not probative of Lear's state of mind and it is minimally probative of any "objective…risk of infringement" since the letter, dated March 15, 2005, predates the development of the Kraft "all-trinary" method; it is likely to confuse and mislead the jury.

**[9.3]** Part (3): Lear executives can testify to the corporate state of mind during its attempt to invent around—but only if they are prepared to answer questions on cross-examination regarding the basis of their testimony. Lear witnesses will not be permitted to waive attorney-client privilege selectively.

**[10]** *Plaintiffs' Motion 3* (to preclude references to other litigation among or between the parties): Granted in part. References to other litigation are excluded except for appropriate use as impeachment.

**[11]** *Plaintiffs' Motion 4* (to prevent Lear from referring to (i) communications between anyone affiliated with JCI on the one hand and 'kovakova' and/or Prashant Mhamunkar and/or WIPRO on the other hand, (ii) motion practice, hearings, filings, and orders regarding such communications, or (iii) and sanctions claim or ruling relating to same): Granted conditionally. If the plaintiffs are foolish enough to make ad hominem attacks on Lear's witnesses (and if I inadvertently allow them to do so), Lear will be permitted to respond in kind.

**[12]** *Plaintiffs' Motion 5* (to exclude reference to the preliminary injunction or the Federal Circuit opinion in this case): Granted. References to the preliminary injunction or the Federal Circuit's opinions will merely

confuse the jury. Totally inappropriate. Nor shall any party refer to any prior claim constructions proposed in this litigation.

**[13]** *Plaintiffs' Motion 6* (to preclude Lear from presenting any argument, evidence, or mention of the amount of time it took Clifford Kraft to reverse engineer the Chamberlain code and/or the difficulty he had in doing so): Conditionally granted, depending on whether copying is injected into the case in connection with obviousness (see Lear's Motion 5 at [4], above).

**[14]** *Plaintiffs' Motions 7 and 8* (to exclude references to, or evidence relating to, any allegedly anticompetitive conduct or strategies of the plaintiffs and to preclude the introduction of the plaintiffs' new products and Chamberlain's new technology not covered by the patents in the suit). Conditionally denied . Assuming that the plaintiffs argue that the commercial success of their product is evidence of nonobviousness, Lear can rebut by showing that that success is actually attributable to anticompetitive behavior unrelated to the invention. I will not allow the trial to turn into an antitrust trial, but since each side will have only 20 hours I am sure that Lear will limit its evidence on this point. If it goes overboard, I'll cut it off.

**[15]** *Plaintiffs' Motion 9* (to exclude evidence of inequitable conduct): Granted. Lear argues that because plaintiffs are arguing willful infringement and thus accusing Lear of unethical conduct, Lear should be allowed to rebut by showing that the plaintiffs engaged in unethical ("inequitable") conduct. That's ridiculous. Inequitable conduct is a separate defense that will be tried separately. Lear shall not introduce any evidence of inequitable conduct by Plaintiffs.

**[16]** *Plaintiffs' Motion 10* (to preclude Lear from making any reference to or introducing any evidence of or relating to any prior positions taken by the parties, prior rulings of this Court, procedures with respect to such prior rulings, and whether any party filed for summary judgment

11

or preliminary injunction): Granted, except that Lear may use prior inconsistent statements/conduct to impeach testimony of the plaintiff's witnesses.

**[17]** *Plaintiffs' Motion 12* (to preclude reference to the preponderance standard for invalidity; the "obvious to try" concept; "full scope" as part of the written-description requirement; and that seeking of patent licenses is irrelevant to the obviousness of a patent): Granted in part. I will instruct the jury on the current law regarding the standard of proof for obviousness, and Lear may not suggest that any other standard of proof is appropriate. I have already ordered that the written-description defense not be tried.

The other terms to which the plaintiffs' object are confusing (like "obvious to try"—the concept is okay, but the term is confusing) Lear may use the term "obvious to try" if it explains it clearly to the jury, but it is not to suggest that this is the exclusive factor for the jury to consider on the issue of obviousness.

Lear may not argue that the seeking of licenses for a patent is irrelevant in determining commercial success.

**[18]** *Plaintiffs' Motion 14* (to exclude any reference, testimony, or evidence relating to, and to instruct the parties, their witnesses and representatives to refrain from making mention of, any purported prior art that was produced after the close of fact discovery): Denied. Nitpicking by the plaintiffs.

**[19]** *Plaintiffs' Motion 15* (to exclude published prior art documents): Denied. More nitpicking; the plaintiffs have given no basis for doubting that the dates on Lear's offered publications are the actual publication dates.

**[20]** *Plaintiffs' Motion 16* (to preclude Lear from presenting any argument, evidence, or mention that claims in the plaintiffs' patents are not infringed because Lear does not practice what is disclosed in the specifications or does not practice the claims in the same way that the plaintiffs do, or that Lear doesn't infringe because it did not physically copy the software code or any other aspect of Chamberlain's transmitter or JCI's HomeLink transmitter): Denied, but Lear will not be allowed to mislead the jury on the law. Infringement is determined in reference to the claims not the specification..

**[21]** *Plaintiffs' Motion 17* (to exclude testimony of Kenneth Samples in liability phase of trial): Denied, given the limited scope that Lear has indicated, in its response to the motion, of his testimony.

**[22]** *Plaintiffs' Motion 18* (to preclude Lear from making any reference to or eliciting testimony or other evidence regarding unrelated, third-party transmitters that operate with Chamberlain's rolling code garage door openers, such as transmitters made and sold by the Skylink Group): Granted. References to compatibility as evidence of infringement will not be permitted, per my earlier decision at [3]. Consequently, there is no need for Lear to present evidence of other compatible products.

**[23]** *Plaintiffs' Motion 20*. This motion, which asks me to exclude a number of documents relating to the plaintiffs' other motions in limine, is extremely confusing, the confusion being attributable to the parties' original mistake of not separating each motion in limine from the supporting statement. Here are my rulings:

    **[23.1]** Kraft Application and Patent (Defendant's Exhibits 26 and 36): Denied per [6] and [8] above.

13

**[23.2]** "Design Around" Documents (Defendant's Exhibits 7–11, 18, 28, 34, 41): These items were addressed in my discussion of Plaintiffs' Motion 2 at [9].

**[23.3]** Kraft "reverse engineering" documents (Defendant's Exhibits 12, 14–17): Denied. The business-record exception clearly applies to these lab notes.

**[23.4]** Prior Art Documents (various): Denied per my earlier decision regarding Plaintiffs' Motion 14 at [18].

**[23.5]** Federal Circuit Decision on Preliminary Injunction (Defendant's Exhibit 25): Granted per my earlier decision of Plaintiff's Motion 5 at [12].

**[23.6]** Chamberlain-Lear Emails (Defendant's Exhibit 27): Denied. Lear is free to argue that there is no "nexus" between the patent and Chamberlain's commercial success (but don't use the word "nexus").

**[23.7]** Documents from Microchip ITC Litigation (Defendant's Exhibits 37–38, 76–77): Usable, per the discussion above in response to Plaintiffs' Motion 3 at [10], for impeachment only.

**[23.8]** Documents relating to the '056 patent (Defendant's Exhibit 40): No decision is necessary here because the '056 patent has been excluded from this case and Lear has withdrawn Exhibit 40.

**[23.9]** Schonfeld CV (Defendant's Exhibit 43): Granted. The jury does not need 73 pages of Dr. Schonfeld's curriculum vitae.

**[23.10]** Document relating to Skylink transmitter (Defendant's Exhibit 71): Granted per my earlier decision at [22].

**[23.11]** Plaintiffs' discovery responses (Defendant's Exhibits 78–79, 80–82): Granted per my earlier decisions at [3] and [22]. Lear wants

14

to introduce Exhibits 78–79 to prove that Chamberlain initially stated that Skylink transmitters purportedly practiced the patents in suit. Discussion of other compatible products is minimally probative of whether Lear's device infringes and is likely to result in jury confusion.

Exhibits 80 and 82 are excluded. They are admissions by the plaintiffs in response to requests from Lear. Lear asked the plaintiffs to admit that certain variables in Lear's software are in trinary. In Exhibit 80 the plaintiffs admitted that they were "binary-encoded trinary." In 82 they admitted that the variables were encoded in trinary if the Federal Circuit's constructions and interpretations were applied. (1) Because I am not allowing the Federal Circuit opinion in evidence, I also exclude Exhibit 82. (2) Since everyone agrees that Lear stores variables in trinary, these exhibits are confusing and a sideshow. This case is about the Z-Bit register, not the stored variables referred to in these documents.

   **[23.12]** Documents from *Lear v. JCI* (Michigan litigation) (Defendant's Exhibits 84–85): Excluded, as indicated by my decision regarding the Plaintiffs' Motion 3 at [10]. These materials, from an unrelated lawsuit between the parties, are at once irrelevant and highly prejudicial.

*Richard A. Posner*
_____

Circuit Judge
March 22, 2011