March 29, 2011

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

---

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., and JOHNSON CONTROLS INTERIORS, L.L.C., *Plaintiffs*, v. LEAR CORPORATION, *Defendant*. | ) ) No. 05 CV 3449 ) ) Circuit Judge ) Richard A. Posner, ) sitting by ) designation |

---

## Order

This order, which is based on today's hearing, has two parts. Part I rules on several issues unrelated to the jury instructions; where appropriate these rulings should be reflected in the final pretrial order. Part II contains rulings on instructions. A copy of the instructions, revised in accordance with these rulings and others made orally at the hearing today, is appended to the order. The transcript of today's hearing will indicate which instructions remain in contention. I remind that there will be a further instructions conference at the close of evidence at the trial, at which objections based on (and only on) unanticipated developments at trial or changes in the law will be heard.

### Part I

1. Plaintiffs' Motion for Additional Limitations on Lear's § 282 Filing is denied.

2. The video tutorial must be revised to delete all references to "code-grabbing," to explain the difference between fixed and variable code, and to explain why an encryption device would use binary or trinary

rather than base-10 numbers. If the parties cannot agree on wording, submit their dispute to me in writing by close of business this Wednesday, March 30.

3. Demonstrative exhibits are also due by close of business Wednesday.

4. Lear may not cross-examine adverse witnesses called by the plaintiffs beyond the scope of the direct examination.

5. Trial will be held on Friday.

6. Lear will submit to me by close of business Tuesday the unredacted version of the redacted document sought by the plaintiffs. If Lear does not do so, it will not be permitted to call any witness whose testimony would be subject to impeachment by the document assuming no attorney-client privilege. Lear cannot be permitted to call a witness to testify on willfulness who, if asked on cross-examination the basis for his belief that Lear's effort to invent around did not infringe the plaintiffs' patents, would refuse to answer on the ground of privilege.

## Part II

1. I reject Lear's denial that it is "waiving" the proposed jury instructions that it submitted. Lear was given until March 22 to object to my proposed jury instructions, and it made several objections. It cannot however be permitted to make a blanket objection to all my instructions, with no particulars, simply on the basis that it prefers its own instructions.

2. Plaintiffs' Objection III (JI 1.1) is granted in modified form. The patent right is now defined in the instruction in terms of right to exclude. And "offering for sale" is added; offering an infringing item for sale is patent infringement. Lear's Objection to JI 1.1 is granted in modified form.

3. Plaintiffs' Objection IV (JI 1.4) is granted. Lear's objection is groundless. The instruction already makes clear that the jury must consider each element separately. Lear's Objection to JI 1.4 is granted in

part, though in modified form, and denied in part. Lear is correct: the doctrine of equivalents requires claim-by-claim equivalence, rather than simply product-to-product equivalence. But I will not give the jury the incomprehensible instruction on claim vitiation proposed by Lear. There is no need to burden the jury with such an instruction. It would just be a confusing alternative way of presenting to the jury the question critical to the issue of infringement of whether creating a binary number digit by digit actually creates a binary number, in which event Lear has infringed.

4. Lear's Objection to JI 1.5 is denied. I will not instruct the jury that the plaintiffs must prove that their patent is valid, and by clear and convincing evidence to boot.

5. Lear's Objection to JI 1.7 is granted in modified form. I have merged the standards of obviousness in the two sets of pattern instructions, and the parties have not objected to the resulting modification of this instruction.

6. Plaintiffs' Objection I (JI 2.7) is granted in modified form. "Binary signal" and "trinary signal" are now defined as "an electrical transmission of a [binary/trinary] number." Lear's Objection to JI 2.7: granted in part and denied in part. It is unnecessary to explain that base 2 and base 3 systems are distinct. I have fixed the error regarding nine versus ten digits and have removed the reference to Morse Code.

7. Plaintiffs' Objection VI (JI 2.8) is granted in modified form.

8. Plaintiffs' Objection II (JI 2.9) is granted in modified form.

9. Lear's Objection to JI 2.10 is granted in modified form. The "objective component" of the willful infringement inquiry is objective likelihood of infringement, not a lay assessment of how companies are "expected to act." I use the same language that I used in JI 1.5 to make it clearer that there is an objective aspect to the inquiry.

10. Plaintiffs' Objection V (JI 2.11) is granted in part and denied in part. The plaintiffs are correct that obviousness requires evidence that one skilled in the art would have thought it obvious to combine elements

from different pieces of prior art. I have made a change to explain this to the jury. Because the plaintiffs will not be arguing commercial success, that factor has been dropped from the instructions and Lear will therefore not be allowed to argue anticompetitive or monopolistic behavior by the plaintiffs.

The plaintiffs are dropping other secondary considerations as well, and I have deleted those dropped ones from the instruction as well. I don't understand what Lear means when it says that the plaintiffs can't walk away from secondary considerations that they don't want to argue to the jury. Does Lear want me to tell the jury that the courts have decided that certain factors show nonobviousness, and Lear will argue to the jury that some of those factors are not present here? I won't do that; it would be extremely confusing. Or does Lear want to offer evidence of secondary factors that demonstrate nonobviousness, such as simultaneous invention? I assume not, but the issue was not explored in today's hearing.

The test for obviousness is explained in 1.7: "An invention is obvious if a person who had ordinary (though not necessarily extraordinary) skill in the technology relevant to the invention and who knew all the prior art existing at the time of the invention would have come up with the invention at that time, or in other words would have viewed the invention as obvious." The "secondary factors" of nonobviousness aren't a version of that test. They are factors that (with the possible exception of simultaneous invention) rebut evidence of obviousness. An invention that doesn't satisfy a long-felt need and doesn't have commercial success isn't necessarily obvious; it just might be a lousy invention.

Lear's Objection to JI 2.11 is denied in part and granted in part and in modified form. In the first paragraph I have made the same change as in JI 1.7. I have made most of the other suggested changes as well, though I have reworked the language about "trumping" a strong showing that the patent is obvious.

Order                                                                                          5

Prior art: on the basis of today's hearing, I have concluded that the plaintiffs may not contest that the 19 items of prior art submitted by Lear are indeed prior art. Their effort to alter the date of invention that has been assumed throughout the case and to obtain an instruction that the requirement that prior art be analogous to the "art" involved in the patented invention come too late.

*Richard A. Posner*

Circuit Judge
March 29, 2011

Attachment

March 29, 2011

# JURY INSTRUCTIONS

## INTRODUCTORY INSTRUCTIONS

1.1

This is a case involving two patents, called '544 and '123. They are patents on technology for preventing other people from opening your garage door—in other words, a technology, which happens to be mathematical in character, for encryption. It is like a password, but more complicated. It will be explained at the trial.

I'm going to give you some preliminary instructions to help orient you to the case. I'll give you more detailed instructions later, when the trial is over and you are about to consider what your verdict will be.

Patents are issued by the U.S. Patent and Trademark Office, a federal agency. They are intended to encourage innovation by giving an inventor the right to exclude others from making, using, selling, or offering to sell his patented invention, without his permission, for a period of years. If someone violates that exclusive right—in other words, infringes the patent—the owner of the patent can sue the alleged violator (the infringer) in a federal district court. Even if the defendant did infringe the patent, the patent owner will lose the case if the defendant proves that the patent was invalid, that is, that the Patent and Trademark Office made a mistake in issuing it. Both infringement and validity are issues in this lawsuit, as I'll explain.

The parties to the lawsuit are Chamberlain, Johnson Controls (which the parties call "JCI"), and Lear Corporation. Chamberlain and JCI are the plaintiffs and Lear is the defendant. Chamberlain owns the patents and JCI has an exclusive license (right) to make products based on them. (For most purposes, you won't have to distinguish between Chamberlain and JCI; you can just think of them as "the plaintiffs.") Lear has created a product that is capable of operating the plaintiffs' garage door openers. That is not improper as long as Lear's product doesn't infringe the plaintiff's patents. Chamberlain and JCI contend that Lear has infringed the patents by making, using, selling, or offering to sell the inventions covered by the patents without the plaintiffs' permission. Lear denies that it infringes the patents and also contends that the patents are invalid, in which event infringing them would not be a violation of the plaintiffs' legal rights.

Lear's product is called "Car2U," but for simplicity's sake I will refer to it just as "Lear's product." You may hear about some earlier versions of the product that Lear never introduced. These pre-production versions are not accused of infringing the plaintiffs' patents, but the plaintiffs argue that they are evidence of willfulness.

1.2

The invention protected by a patent is described in the section of the patent labeled "patent claims," which are set forth in separately numbered paragraphs at the end of the patent. When a product (in this case the defendant's product) is accused of infringing a patent, the patent claims must be compared to the product.

To be entitled to patent protection, an invention must be new, useful, and non-obvious. A patent is not new if the invention was already known, or, in patent lingo, was part of the "prior art." I will give you further instructions about what counts as prior art at the end of the case.

1.3

The jury's job is to determine the facts relating to the legal issues. I will tell you what the law is and you'll apply the law to the facts to determine which side wins. Nothing I say during the trial is intended to indicate what I think the facts are or your verdict should be. You're the decision makers; I'm the traffic cop. Although this is a civil case rather than a criminal case, it is very important to the parties. They and I expect you to make a careful, thoughtful, conscientious decision, bearing in mind the importance of the case to the parties. The parties are business firms rather than individuals, but they have legal rights just as individuals do and are entitled to the same consideration that you would give a case between individuals.

1.4

For the plaintiffs to prove infringement of the two patents at issue in this case, they must persuade you that their position is more likely true than false. You don't have to be certain, in order to find infringement, but you have to be convinced that they have a stronger case than the defendant. Concretely, the plaintiffs must prove that every element in each claim contained in the patents is found in the defendant's product, whether as an exact duplicate of the element or as being equivalent to it in the sense that a person of ordinary skill in the relevant technology would have considered the differences between them to be insubstantial. (A person of "ordinary skill" in the technological field to which the patented invention belongs means a person who has the education and experience necessary for a competent understanding of the technology described in the patent; he doesn't have to be a genius.) Any difference is insubstantial if, for each element of the patented claims, a feature of the defendant's product performs substantially the same function and works in substantially the same way to achieve substantially the same result. One factor you may consider in making that determination is whether a person of ordinary skill (as defined above) would have regarded a part of Lear's product to be interchangeable with the element of the claim.

1.5

The plaintiffs contend not only that the defendant infringed their two patents, but that it did so willfully. To prove this, they must prove by "clear and convincing evidence" that it was highly likely that the defendant's product infringed and that the defendant either knew that it was highly likely or should have known.

"Clear and convincing" evidence means evidence that convinces you that it is highly probable that the particular proposition is true. You must decide whether there was simple infringement, under the lower standard of proof that I mentioned earlier, and if you find there was, you should go on to decide whether the infringement was willful.

1.6

The defendant contends that all of the claims that the plaintiffs contend are infringed are invalid. Patents are issued by the U.S. Patent and Trademark Office, so the law presumes they're valid. But a court can invalidate a patent or a particular claim in a patent. To prevail on its claim of invalidity, the defendant must prove invalidity by clear and convincing evidence.

1.7

A patent claim is invalid if the invention claimed is obvious. An invention is obvious if a person who had ordinary (though not necessarily extraordinary) skill in the technology relevant to the invention and who knew all the prior art existing at the time of the invention would have come up with the invention at that time, or in other words would have viewed the invention as obvious.

1.8

The evidence you'll be hearing or reading consists of testimony of witnesses, documents admitted into evidence as exhibits, and any facts that the lawyers agree to or that I may instruct you to accept as being true. The exhibits are in binders, one for each side, which you will be given momentarily.

The parties may present the testimony of a witness by reading from a deposition transcript or by playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had appeared in court.

Certain things are not evidence and must not be considered by you:

Statements, arguments and questions by lawyers.

Objections to questions or exhibits. Lawyers are entitled to object when evidence being offered is inadmissible. If the objection is sustained, ignore the question or exhibit. If the objection is overruled, treat the answer or exhibit like any other.

Testimony that I have excluded or told you to disregard.

Anything you may see or hear outside the courtroom. You're to decide the case

solely on the basis of the evidence presented in the courtroom.

Certain exhibits that are called "demonstrative exhibits," such as models, diagrams, graphs, and sketches, may be shown to you but they are not themselves evidence; they're just to help you understand the case better.

In deciding whether any fact has been proved, you should consider all the evidence relating to the question regardless of which side introduced it. You should also decide how much of a witness's testimony to accept or reject.

1.9

A few words about your conduct as jurors.

You are not to discuss the case among yourselves until at the end of the case you go to the jury room to deliberate and to decide on your verdict.

You're not to talk to anyone (including members of your family, and friends) or make any public or online comments about this case until the trial has ended and you have been discharged as jurors.

You're not to read or listen to anything bearing on this case in any way, including news stories, radio or television reports, or the internet. You're not to do any research online or conduct any other type of investigation of the case, the lawyers, the witnesses, or the companies that are the parties. If anyone tries to talk to you about the case, bring that to my attention promptly.

Don't form an opinion until all the evidence is in.

You've been given pads on which to make notes if you want, but leave the pads in the jury room at the end of each day, until you begin your deliberations with the other jurors, and don't be unduly influenced by the notes of other jurors, because they may not be accurate.

If you want to ask a question of a witness, raise your hand and I'll ask you to ask me the question first, so that I can make sure that it's in a form that's proper for the witness to answer.

1.10

The trial will now begin. Each side will make an opening statement. That is not evidence, but just a sketch of what the party intends to prove. Next each side will questions its witnesses, and the lawyers for the other side will cross-examine them, to try to bring out errors in their testimony. After all the witnesses have testified, the lawyers will present closing arguments. I will then give you final instructions, setting forth the law in somewhat greater detail than in these preliminary instructions, and you'll then go to the jury room with a copy of the instructions, your notes, and your evidence binders, to deliberate on your verdict.

# FINAL INSTRUCTIONS

2.1

    Members of the jury, you've seen and heard all the evidence and arguments of the lawyers. Now it's your turn. You'll decide, on the basis of the evidence you've heard and read, what the facts are that relate to how the case should be decided, and you'll apply the law that I explain to you in these instructions to the facts. You must follow my legal instructions even if you disagree with them, because they state the law, and you must apply the law, just like a judge.

    Perform these duties fairly and impartially.

    Nothing I say now, and nothing I said during the trial, are meant to indicate what I think the facts are or your verdict should be.

2.2

    The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations, which are agreements between both sides that certain facts are true. You should give the same consideration to testimony presented to you by video or by reading from deposition transcripts as you would if the witnesses had come to court and testified live.

2.3

    These things are not evidence:
    Testimony or exhibits that I ordered stricken.
    Anything you saw or heard outside this courtroom.
    Questions to witnesses, and objections to questions by lawyers.
    The lawyers' opening statements and closing arguments
    Any notes you took during the trial; they are just to help you remember things.

2.4

    In determining whether any fact has been proved, you should consider all of the evidence relating to the question regardless of which side introduced it.

2.5

    You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all, and how much weight, if any, to give the testimony in resolving a factual issue. You shouldn't just count noses: the fact that one side presents more witnesses, testimony, or other evidence on an issue than the other side doesn't mean that the first side is right.

2.6

You have heard some opinions from witnesses who are called "expert witnesses" because they have specialized knowledge. You should weigh this testimony in the same way that you weigh the testimony of any other witness. You are not required to accept an expert's opinion, but you must give an expert's testimony the weight you think it deserves, considering the reasons the witness gave for the opinion, the witness's qualifications, and the other evidence, including other expert evidence, in the case.

2.7

The issues you have to decide are (1) whether the plaintiffs have proved by a preponderance of the evidence that Lear infringed claims 1, 2, and 4 of the '544 patent and claim 1 of the '123 patent and (2) whether Lear has proved by clear and convincing evidence that claims 1, 2, and 4 of the '544 patent and claim 1 of the '123 patent are obvious and therefore invalid.

A few terms in the patents don't have their everyday meaning, but instead a special meaning, as follows: "binary code" means a binary number and "binary signal" means an electrical transmission of a binary number; "trinary code" means a trinary number and "trinary signal" means an electrical transmission of a trinary number. Remember that binary numbers are quantities represented in the base-2 system, and trinary numbers are quantities represented in the base-3 system. You heard about these systems, and their relevance to the case, when you saw the video tutorial and heard testimony, during the trial, but I want to give you a brief refresher course, with examples that you can go over in your deliberations.

A binary number is a number in base 2; a trinary number in base 3. A base is just a number used as a building block for expressing numerical quantities. Most of our counting is in base 10. Base 10 denotes the base number 10. A number can be expressed as a sum of base numbers. Here is how to express 1254 as a sum of numbers based on 10:

$1000 = \mathbf{1} \times 10^3$ (a cube)
$\phantom{0}200 = \mathbf{2} \times 10^2$ (a square)
$\phantom{00}50 = \mathbf{5} \times 10^1$ (just plain 10)
$\phantom{000}4 = \mathbf{4} \times 10^0$ (any number to the power of 0 equals 1)
____

Hence **1254**

Other bases can be used to express the quantity 1254. This results in the same quantity being expressed by a different series of numbers.

So for base 2:

$1024 = \mathbf{1} \times 2^{10}$
$0 = \mathbf{0} \times 2^{9}$
$0 = \mathbf{0} \times 2^{8}$
$128 = \mathbf{1} \times 2^{7}$
$64 = \mathbf{1} \times 2^{6}$
$32 = \mathbf{1} \times 2^{5}$
$0 = \mathbf{0} \times 2^{4}$
$0 = \mathbf{0} \times 2^{3}$
$4 = \mathbf{1} \times 2^{2}$
$2 = \mathbf{1} \times 2^{1}$
$0 = \mathbf{0} \times 2^{0}$
____

**1254 = 10011100110**

And now for base 3:

$729 = \mathbf{1} \times 3^{6}$
$486 = \mathbf{2} \times 3^{5}$
$0 = \mathbf{0} \times 3^{4}$
$27 = \mathbf{1} \times 3^{3}$
$9 = \mathbf{1} \times 3^{2}$
$3 = \mathbf{1} \times 3^{1}$
$0 = \mathbf{0} \times 3^{0}$
____

**1254 = 1201110**

Notice therefore that these are three different ways—three different sets of numbers—for expressing the *identical* quantity, and you must know what base system is being used in order to know what quantity is being expressed.

| **Base 10** | **Base 2** | **Base3** |
|---|---|---|
| **1254** | **10011100110** | **1201110** |

The reason that encryption devices for the garage-door openers use base-2 or base-3 systems rather than the more familiar, everyday base-10 is that base 2 uses only

two digits (numbers)—0 and 1—and base 3 uses only three digits—0, 1, and 2—whereas the base-10 system uses ten digits (0, 1, 2, 3, 4, 5, 6, 7, 8, 9). It is easier for the transmitter in the garage-door opener to signal the receiver in the garage door with just two or three separate digits than with ten; for example, with only two digits, the transmitter could transmit a series of long (1) and short (2) electrical signals.

2.8

A product infringes a patent if every element in a claim is found in Lear's product. (Remember that the pre-production versions of Lear's product are not alleged to infringe the plaintiffs' patents; their only relevance is as possible evidence of willfulness.)

The claims in dispute are claims 1, 2, and 4 of the '544 patent and claim 1 of the '123 patent.

To find infringement of claim 1 of the '544 patent, you must find that Lear's product contains: a "binary code generator responsive to the enabling apparatus for generating a variable binary code, said variable code being different for each enabling by the enabling device," and also a "trinary code generator for generating a three-valued or trinary code responsive to the variable binary code."

The other elements in claim 1 are not in dispute, so you don't have to worry about them.

Claims 2 and 4 of the '544 patent:

Lear's product can't infringe claims 2 and 4 in the '544 patent if it doesn't infringe claim 1. If, therefore, you find that Lear's product does not infringe claim 1, you shouldn't consider claims 2 and 4.

To find infringement of claim 2 of the '544 patent, you must find that Lear's product infringes claim 1 and also that it contains: an "apparatus for receiving said variable binary signal and producing a mirrored binary signal, said mirrored binary signal being supplied to said trinary code generator for generating the trinary signal from the variable binary signal."

To find infringement of claim 4 of the '544 patent, you must find that Lear's product infringes claims 1 and 3 and that it also contains "a trinary interleaved fixed and rolling code signal."

Claim 1 of the '123 patent:

To find infringement of claim 1 of the '123 patent, you must find that Lear's product contains "a source of a sequence of binary codes, successive binary codes in the sequence being different from predetermined preceding codes in the sequence" and also a "trinary code generator for converting said sequence of binary codes to a sequence of trinary codes."

2.9

You don't have to be absolutely certain in order to find infringement, but you have to be convinced that the plaintiffs have a stronger case for infringement than Lear has for noninfringement. The plaintiffs must prove that every element in the claim that you are considering is found in Lear's product. This can be proved in either of two ways. An element of a claim is found in Lear's product if the element in its product is exactly the same as it is in the claim in the plaintiffs' patent, or alternatively if the element in Lear's product is equivalent to is an element in the claim.

So what exactly is "equivalence"? An element in the product that is alleged to infringe the plaintiffs' patent is equivalent to an element in the patent if the differences between the two would be thought insubstantial by a person of "ordinary skill" in the field of knowledge relating to the invention. (A person of "ordinary skill" in the technological field to which the patented invention belongs just means a person who has the education and experience necessary for a competent understanding of the technology described in the patent; he doesn't have to be a genius.) To determine whether the differences are insubstantial or substantial, you should consider whether the element in question performs substantially the same function, in substantially the same way, to achieve substantially the same result, as an element of the claim. If so, the elements are equivalent.

The fact that Lear has its own patent does not give it a right to infringe someone else's patent. The government's decision to issue Lear the patent is relevant, though not conclusive, evidence that the Lear patent is not the equivalent of a previously patented invention, such as the inventions covered by the plaintiffs' patents. But Lear's patent is irrelevant to the issue of equivalence unless you find that Lear actually practices its patented invention.

2.10

The plaintiffs contend not only that Lear infringed their two patents, but that it did so willfully. You are to consider willful infringement only if you have found that Lear infringed. To prove willfulness, the plaintiffs must prove by "clear and convincing evidence" both that it was highly likely that Lear's product infringed and that Lear either knew that it was highly likely or should have known that.

"Clear and convincing" evidence is evidence that makes it highly probable that a particular proposition is true. You must decide whether there was simple infringement, under the lower standard of proof that I mentioned earlier ("preponderance of the evidence"—that is, more likely than not, even if just a little more likely than not), and if you find there was, you should go on to decide whether the infringement was willful.

2.11

Even if you find that there was infringement, that isn't the end of the case. Lear contends that claims 1, 2, and 4 of the '544 patent and claim 1 of the '123 patent are invalid because they were obvious before the patents were issued. If Lear proves this contention, it wins the case even if it infringed the plaintiffs' patents. But to prove obviousness and hence invalidity, Lear must prove by clear and convincing evidence that a person of ordinary skill as defined earlier, and who knew all the "prior art" existing when the invention was made, would have invented the patented product at that time, or in other words would have viewed the invention as obvious. "Prior art" means all the information that is publicly known, used by others, or available on the date of the invention to a person of ordinary skill. For example, other patents, inventions, products, articles, books, and scientific literature are all prior art. To evaluate obviousness, you should assume that the person of ordinary skill knows all the "prior art" existing when the invention was made. You should then determine what he would have thought obvious. You must not use hindsight; that is, you must not consider what is known now, including what could be learned from the plaintiffs' patents.

In making your decision regarding obviousness, you should consider the scope and content of the prior art and also any differences between the prior art and the invention in the patent claim. These factors (scope and content of the prior art and any differences between the prior art and the invention in the patent claim) are the primary factors that you should consider in deciding the question of obviousness, but you should also consider the following secondary factors, which may indicate that the plaintiffs' invention was not obvious: whether other inventors failed in attempting to make the invention in the patent claim; or copied the invention; or praised it' or sought or obtained a license to the patent from the patent holder. None of these factors has to be present, for you to conclude that the plaintiffs' invention was not obvious. And it is for you to decide how much weight to give each factor that you find is present. But remember that these are secondary factors, and you must not give them as much weight as the primary factors listed above.

Two more points: (1) Because most inventions are built on prior knowledge, the fact that each element of a claim is found in prior art is not enough, by itself, to prove obviousness. (2) In determining whether Lear has proved obviousness, you may combine multiple items of prior art, if a person of ordinary skill would have thought it obvious to combine them.

2.12

When you go to the jury room for your deliberations, first select a presiding juror to be the foreperson. He or she will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you. Take them to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

2.13

The verdict must represent the considered judgment of each juror and must be unanimous, whether the verdict is in favor of the plaintiffs or the defendant, or for the plaintiffs on some issues and the defendant on others. You should make every reasonable effort to reach a unanimous verdict and in doing so you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views, and to change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

2.14

If it becomes necessary during your deliberations to communicate with me, you may send a note by a court security officer, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any other means. If you have trouble reaching a unanimous verdict, you're not to tell me or anyone else which side is favored by more jurors.